IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2007

Charles R. Fulbruge III
Clerk

————————————————

No. 05-21007

————————————————

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

VU ANH LE

Defendant-Appellant

————————————————————————————

Appeals from the United States District Court
for the Southern District of Texas

————————————————————————————

Before JONES, Chief Judge, and HIGGINBOTHAM and CLEMENT, Circuit
Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Vu Anh Le was convicted of one count of being a felon in possession of a
firearm in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). Le was sentenced to
120 months imprisonment, and he now appeals his conviction and sentence. We
affirm.

FACTS AND PROCEEDINGS

The relevant events revolve around a series of altercations that occurred
during the evening of July 30, 2003, and the early morning of July 31, 2003.
Two groups of people arrived at Star Karaoke in Houston, Texas. One group
included Le, Le's girlfriend, a man nicknamed Flavor, and Flavor's girlfriend.
The other group included Ty Nguyen, Nguyen's girlfriend, Dat Dao, Thong Dao,

and Nien Kao.

In the lobby of Star Karaoke, witnesses saw Le and Flavor playfighting against each other with firearms. One gun was described as black and the other as silver or black and silver. Later, in one of the karaoke rooms, Nguyen's girlfriend and Flavor's girlfriend got into a physical altercation. Witnesses from Nguyen's group observed Le pull a silver gun from his waistband and fire it into the ceiling. One of those witnesses, Dat Dao, then saw Le place a silver gun in his pants. The club manager told everyone to leave. Outside, the two women continued their physical altercation. Nguyen tried to stop the fight.

At this point, there was some disagreement as to what occurred. Witnesses stated that Le drew a firearm and either aimed it at the back of Nguyen's head or held it out while telling Flavor to leave and go home. Without firing the gun, Le walked away. Witnesses stated that Flavor then walked over to Nguyen and shot him in the head, killing him. A bullet also hit another person at the scene. Flavor then fled the scene.

Police subsequently arrived and discovered a silver gun in the trash can of the men's restroom of Star Karaoke. The police found a cartridge case whose location suggested that it was the case from the bullet that went through the ceiling of the karaoke room, where a hole was found. No DNA evidence or fingerprints were recovered from the gun.

Le was convicted of being a felon in possession of a firearm. Because there was no physical evidence tying Le to the firearm, the government's case relied on the testimony of various individuals who saw him with a gun during the evening. Le appeals, raising four points of error.[1]

---

[1]Le also argues that 18 U.S.C. § 922(g)(1) is unconstitutional on its face or as applied. He concedes that these issues are foreclosed by United States v. Daugherty, 264 F.3d 513, 518 (5th Cir. 2001). Le raises the claims here to preserve them for

DISCUSSION

I.    Supplemental jury instructions

During deliberations, the jury sent a note to the judge asking: "Are we allowed to consider the statements made to police as evidence, or only to impeach statements made in court?"  Le argued that the judge should simply instruct the jurors to read the instructions that were given to them before they retired to their deliberations.  Instead, the judge gave the jury various instructions on the rules of evidence which dealt with bases on which to treat the testimony as substantive, rather than only impeachment, evidence.  Le renewed his objection to the supplemental jury instructions.

The government argues for plain error review on the basis that defense counsel's objection at trial was only to the actual giving of supplemental instructions and did not refer to the specific issues raised on appeal.  The defendant argues that his objection to the giving of supplemental instructions preserved all of his arguments relating to those instructions.  Because we reject the defendant's arguments under either standard of review, we will assume that the defendant preserved these issues for appeal.

With respect to supplemental jury instructions, "appellate courts are guided by lofty, but very general, propositions and admonitions."  United States v. Carter, 491 F.2d 625, 633 (5th Cir. 1974).  This court, in considering supplemental jury instructions, considers whether "the court's answer was reasonably responsive to the jury's questions and whether the original and supplemental instructions as a whole allowed the jury to understand the issue presented to it."  United States v. Cantu, 185 F.3d 298, 306 (5th Cir. 1999)

---

further review.  See McKnight v. Gen. Motors Corp., 511 U.S. 659, 659–60 (1994) (per curiam).

(internal quotation omitted). The Supreme Court has cautioned about the impact of supplemental charges to the jury. "Particularly in a criminal trial, the judge's last word is apt to be the decisive word. If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge." Bollenbach v. United States, 326 U.S. 607, 612 (1946). Fifth Circuit caselaw has suggested that when giving a supplemental instruction the district court should either refer the jury back to the original instructions, "remind them that all instructions must be considered as a whole[, o]r take other appropriate steps to avoid any possibility of prejudice to the defendant." United States v. L'Hoste, 609 F.2d 796, 809 (5th Cir. 1980) (internal quotation omitted).

"[W]hen the jury requests further instructions on points which are favorable to the Government, the trial judge should repeat instructions favorable to the defense where the requested information taken alone might leave an erroneous impression in the minds of the jury." Carter, 491 F.2d at 634 (internal quotation omitted). The district court must meet "the high standard of balance and fairness necessary to assure [the] defendant a fair trial." Id. at 633. Accordingly, the touchstone of the inquiry might be described as whether there was prejudice to the defendant. See L'Hoste, 609 F.2d at 809.

On appeal, Le challenges the supplemental jury instructions on two grounds: (1) the district court gave impermissibly government-favored instructions, and (2) the district court failed to refer to the original instructions.[2]

(1)    Impermissibly government-favored supplemental instructions

---

[2]Le asserts vaguely that the supplemental instructions contained misstatements of the law, but he does not clearly explain this argument. His argument is deemed waived for inadequate briefing. See United States v. Freeman, 434 F.3d 369, 374 (5th Cir. 2005).

4

The theory of the defense was that the witnesses were lying because they had feelings of acrimony towards Le due to the altercations between the two groups at Star Karaoke. In order to discredit these witnesses, Le attempted to show inconsistencies between their testimony to the police and their testimony at trial. Accordingly, Le argues that by giving supplemental instructions that referred only to the admissibility of these statements as substantive evidence, the district court prejudiced his defense by directing the jury's attention away from the impeachment value of these statements.

The supplemental jury instructions did not prejudice Le's defense. While the emphasis of the supplemental instructions was admittedly on bases for admission of testimony that did not favor Le's theory of the case, the jury question indicated by its own terms that the jury already understood that this testimony was admissible for impeachment purposes. The jury asked, "Are we allowed to consider the statements made to police as evidence, or only to impeach statements made in court?" The jury therefore demonstrated its knowledge and awareness that these statements were admissible to impeach the witnesses' credibility, which goes to Le's theory of the case. As such, the giving of supplemental jury instructions was not reversible error.

(2)     Failure to refer to original instructions

The district court did not refer back to the original instructions after giving the supplemental instructions. While Le's counsel did not request that the court do so, this court has stated that a reference to the original jury instructions is necessary when the supplemental instructions "taken alone might leave an erroneous impression in the minds of the jury." Carter, 491 F.2d at 634 (internal quotation omitted). The caselaw indicates substantial concern with the possibility of prejudice in such situations. See L'Hoste, 609 F.2d at 809. As noted, however, the jury's question itself indicated that it understood that the

prior statements were admissible to show impeachment. The failure to refer to the original instructions while giving the supplemental instructions did not prejudice the defendant. We reject this basis for reversal.

## II. Parole status statements

This court reviews for abuse of discretion the district court's denial of a motion for a mistrial based on the admission of prejudicial testimony. *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998). In situations where the jury hears prejudicial information, "a new trial is required only if there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record." Id.

Le and the government agreed prior to trial to stipulate to Le's prior felony conviction. After the close of the government's case-in-chief, a statement was read to the jury which indicated that the parties "agree[d] to stipulate that the defendant had been convicted of a felony punishable by more than one year imprisonment, prior to July 31st, 2003, the date of the offense at issue."

During the trial, Le's parole status was mentioned three times. First, during opening statements, the government stated that Le knew he needed to rid himself of the gun because of his parole status. Le did not object. Second, a police detective testified for the government that Le "said he couldn't have [a firearm] because he was on parole." Le objected, the government did not dispute the objection, and the court sustained the objection. The court did not, however, direct the jury to disregard the statement at the time nor did Le request that the court do so. Third, the government stated during closing argument that Le had originally wanted to flee the scene because the police were en route and he knew he should not have the gun because he was on parole. After objection and discussion at the bench, Le's counsel decided against a curative instruction but instead moved for a mistrial, which was denied. Le's counsel declined the

6

opportunity for the court to direct the jury to ignore the statement, stating that this would draw even more attention to the information. Le argues that the district court erred in denying his motion for a mistrial after the government mentioned that he was on parole when he committed the offense.

These three references were a very small part of the trial. The jury heard testimony from various witnesses that Le brandished a firearm on at least two occasions during the evening, and the police recovered a gun from a location Le was seen near after the altercations occurred. Furthermore, the reference to Le's parole status during opening statements went by without objection. At this point the jury had the information. The testimony objection was sustained. Le's counsel declined a curative instruction regarding the closing argument statement. The references to Le's parole status did not have a "substantial impact upon the jury's verdict." Paul, 142 F.3d at 844. We reject this basis for reversal.

## III. Four-level enhancement under U.S.S.G. § 2K2.1(b)(5)

This court reviews de novo the district court's guidelines interpretations and reviews for clear error the district court's findings of fact. United States v. Aguirre-Villa, 460 F.3d 681, 682 (5th Cir. 2006). In addition, this court "may affirm the district court's judgment on any basis supported by the record." United States v. Clay, 408 F.3d 214, 218 n.7 (5th Cir. 2005). The government argues that the court should only review for plain error because Le's objection on appeal is different from that raised in district court. Because we reject Le's argument under either standard of review, we will assume that he preserved the issue for appeal.

The district court applied a four-level sentencing enhancement based on a finding that "the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(5) (2004). The

7

guidelines define "felony offense" in this enhancement as "any offense (federal, state, or local) punishable by imprisonment for a term exceeding one year, whether or not a criminal charge was brought or conviction obtained." Id. cmt. n.4. The court at sentencing credited trial testimony indicating that Le possessed the firearm in connection with another felony offense, namely, the Texas felony of aggravated assault.

Le's argument on appeal is that the evidence presented at trial was insufficient to permit this enhancement because aggravated assault under Texas law requires the victim to perceive the threat of bodily injury. See McGowan v. State, 664 S.W.2d 355, 357–58 (Tex. Crim. App. 1984). Le asserts that the evidence at trial never indicated that the victim of the alleged assault, Nguyen, perceived that he was being threatened by Le. The government argues that the evidence was sufficient to conclude that Le committed an attempted aggravated assault and urges the court to uphold the enhancement on this alternative basis. See Clay, 408 F.3d at 218.

Under Texas law, "[a] person commits an offense [of attempt] if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends to but fails to effect the commission of the offense intended." TEX. PENAL CODE § 15.01(a). Because the aggravating factor here was the use of a deadly weapon, the attempt would be an attempted aggravated assault. Id. § 15.01(b). Texas law treats an attempted aggravated assault as a third degree felony, which is punishable by between two and ten years imprisonment. TEX. PENAL CODE §§ 12.34(a), 15.01(a), 22.02(a)(2).

The evidence at trial substantiates the conclusion that Le committed an attempted aggravated assault, as he pointed the gun at Nguyen in the middle of a heated situation in which two people, one from each of their respective groups, were fighting. On this alternative basis, we reject Le's argument that

the four-level enhancement was improper.

IV.    Base offense level for a prior conviction of a "controlled substance offense"

Le acknowledges that he did not object to the determination of the base offense level at trial, and therefore review is for plain error only.  United States v. Villegas, 404 F.3d 355, 358 (5th Cir. 2005).  On plain error, the defendant must establish (1) error, (2) that was plain, (3) that affected substantial rights, and (4) that the court should use its discretion to correct the error because failure to do so would result in a miscarriage of justice.  Id. at 358–59.

The district court determined that Le's base offense level should be twenty because "the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of . . . a controlled substance offense."  U.S.S.G. § 2K2.1(a)(4)(A) (2004).  The relevant guidelines section defines "controlled substance offense":

> The term "controlled substance offense" means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).[3]  The government must prove by "a preponderance of the relevant and sufficiently reliable evidence" that the prior conviction permits the guidelines classification.  United States v. Herrera-Solorzano, 114 F.3d 48, 50 (5th Cir. 1997) (internal quotation omitted).

Generally, courts employ the so-called categorical approach from Taylor

---

[3]Le correctly identifies that this language is the same language used in the definition of "drug trafficking offense" under U.S.S.G. § 2L1.2, cmt. n.1(B)(iv). Accordingly, cases discussing these definitions are cited interchangeably.

v. United States, which instructs "the trial court to look only to the fact of conviction and the statutory definition of the prior offense." 495 U.S. 575, 602 (1990). In a narrow range of cases, like the drug offense presented here, courts may examine "the statutory definition of the offense, the charging paper and jury instructions." United States v. Allen, 282 F.3d 339, 343 (5th Cir. 2002) (referencing Taylor). Under Shepard v. United States, the Supreme Court defined this inquiry with respect to a case involving a guilty plea to include "the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." 544 U.S. 13, 16 (2005).

The parties agree that the prior conviction was for "Manufacture or Delivery of Substance in Penalty Group 2" under section 481.113(a) of the Texas Health & Safety Code. This statute states that "a person commits an offense if the person knowingly manufactures, delivers, or possesses with intent to deliver a controlled substance listed in Penalty Group 2." Id. One can violate this Texas statute in at least five ways: "1) manufacture, 2) an offer to sell;[4] or 3) possession with intent to deliver; or through knowing delivery by 4) actual transfer; or 5) constructive transfer." Lopez v. State, 108 S.W.3d 293, 297 (Tex. Crim. App. 2003).[5]

Le argues that the guidelines classification was improper because engaging in an "offer to sell," the second way to violate the Texas statute, would not constitute a "controlled substance offense" as defined in the guidelines. The

---

[4]Under this statute, an "offer to sell" is a type of delivery. Id.

[5]Lopez actually dealt with section 481.112 of the Texas Health & Safety Code rather than section 481.113. The only difference in statutory language between these sections is the penalty group in which the drug is listed. Accordingly, the caselaw applies interchangeably in analyzing the other elements of both crimes.

Texas statute of conviction permits a conviction under its "delivery" section by virtue of an offer to sell without possession, Lopez, 108 S.W.3d at 297, and in order for Le's conviction to be classified as a controlled substance offense under the guidelines, it must involve possession of drugs. See United States v. Garza-Lopez, 410 F.3d 268, 274 (5th Cir. 2005). But cf. United States v. Palacois-Quinonez, 431 F.3d 471, 476 (5th Cir. 2005) (distinguishing Garza-Lopez by holding that "possession with intent to distribute" can include "constructive possession" attained by one who purchases drugs for future sale).

The materials Le himself attached to the record on appeal indicate that he possessed the drugs. One of the documents is a guilty plea in which Le said, in a signed statement, that he "committed the offense of possession of a controlled substance on June 1, 2000 along with Benjamin Dang and Rathna King who had joint possession of the ecstasy, knew of it and were also exercising care, custody, and control over it." This written plea document is admissible. See Shepard, 544 U.S. at 16; see also United States v. Castillo-Morales, No. 07-40053, 2007 WL 3287531, at *3 (5th Cir. Nov. 8, 2007) (holding that when a defendant stipulates that a factual basis for his plea is present in court documents, courts may use any uncontradicted facts in those documents to establish an element of a prior conviction for sentencing purposes).

The guilty plea document negates the possibility that Le's conviction was for conduct that did not involve possession. Le specifically stated that he pleaded guilty to possession of drugs. It is clear from this document that Le was not pleading guilty to delivery by an offer to sell without possession. The only way to violate the Texas statute of conviction by possessing drugs is to do so with intent to distribute in some way; the Texas statute does not permit a conviction for possession without intent to manufacture, delivery, or distribute. See Lopez, 108 S.W.3d at 297. Accordingly, the only way for Le to have pleaded guilty to

violating the Texas statute of conviction by virtue of "possession of a controlled substance," is to have "possesse[d] with intent to delivery a controlled substance." TEX. HEALTH & SAFETY CODE § 481.113(a). Such a conviction qualifies as a "controlled substance offense" under U.S.S.G. § 4B1.2(b). See United States v. Ford, No. 06-21042, 2007 WL 4303800, at *3–4 (5th Cir. Dec. 11, 2007) (holding that "possession with intent to deliver" under the Texas statute is indistinguishable from "possession with intent to distribute," and thus qualifies as a "controlled substance offense" under the guidelines). We therefore reject this basis for reversal of Le's sentence.

CONCLUSION

We AFFIRM the judgment of the district court.