# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 30, 2012

No. 10-40707

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARK ANTHONY OWENS; KIMBERLY MICHELLE KIRKWOOD,

Defendants - Appellants

Appeals from the United States District Court for the
Eastern District of Texas

Before JONES, Chief Judge, and OWEN and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge.

Mark Anthony Owens and Kimberly Michelle Kirkwood were convicted of bank robbery by force or violence and aiding and abetting the commission of bank robbery by force or violence, in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2. Both Owens and Kirkwood appeal the denial of their motions to sever and argue that there is insufficient evidence to support the guilty verdict. Additionally, Kirkwood appeals the denial of her motion for a mistrial. We affirm their convictions. Because our holding centers on the sufficiency of the evidence, a detailed examination of the evidence follows.

No. 10-40707

I. Facts and Proceedings

Kirkwood worked as a bank teller at Texas State Bank's Phelan Boulevard branch in Beaumont, Texas, and lived with her boyfriend of three years, Owens. On Friday, September 7, 2007, Kirkwood requested additional money for her cash drawer. Normally, bank tellers had approximately $25,000 in each of their cash drawers. Using bank procedures, Kirkwood received an additional $58,000, increasing the total in her cash drawer to approximately $89,000.

On Saturday, September 8, 2007 at approximately 8:20 a.m., Kirkwood picked up her co-worker, Jessie Jeanis, for work. Kirkwood and Jeanis were the only bank employees scheduled to work that day. Soon after they arrived at the bank and Kirkwood entered the building, a black Chevy S-10 pick-up truck parked near Kirkwood's car where Jeanis was sitting. A man dressed in a black suit, black floppy hat, black gloves, black sunglasses, and black shoes exited the truck and covered his face with black cloth. Kirkwood opened the door to the bank and stood with the door open; Jeanis exited Kirkwood's car and entered the bank. The man entered behind Jeanis, grabbed Jeanis's hair, and held an object to Jeanis's back that Jeanis could not identify but described as hard, pointed, and metallic. The man instructed Kirkwood to fill his duffle bag with money. Kirkwood walked to the vault and emptied $84,755 from her cash drawer into the bag, including tagged bills. The man ordered the two women to lie on the floor and count to one hundred. Jeanis got up when the door closed behind the man despite Kirkwood telling her to stay on the ground as the robber had instructed. She saw the truck driving away and wrote down its license plate number on her checkbook register. Jeanis gave Kirkwood the checkbook register and told her to call 911 while Jeanis called their manager.

When the police arrived, they interviewed Kirkwood and Jeanis. The women could not identify the robber but gave the police the license plate number of the black Chevy S-10 pick-up truck. Jeanis told the officers that one of the

2

No. 10-40707

letters written on the checkbook register had been changed from a "Y" to a "9." The police tracked the license plate number containing the "Y" to Anthony English. Upon arriving at English's home, the police discovered a motorcycle registered to Kirkwood in English's front yard that was still warm from being ridden. Earlier, Owen was seen driving that motorcycle to English's home. When the police found English, he reported his truck stolen. No evidence of the robbery was discovered during searches of English's home and the home where English had slept on the night of September 7.

Owens and English were close friends. English later told the agents that although he did not know who borrowed his truck on September 8, Owens commonly borrowed English's truck and left the motorcycle at English's house. However, Owens only would borrow the truck with English's permission, and no one asked permission to borrow English's truck on September 8. On September 7, English had left his keys on top of his entertainment center when he was napping, numerous people from the neighborhood were at his home, and his front door was unlocked.

During this investigation, Owen and Kirkwood consented to be interviewed by the FBI. Kirkwood told agents that she thought Owens was at their home and at the L.L. Melton YMCA during the time of the robbery. Owens reported that he was working out at the YMCA beginning at approximately 8:20 a.m. on September 8 and that Kirkwood called to tell him what had happened to her at the bank. However, a YMCA employee (Courtney Moore) and a YMCA guest (Daisy Johnson) told the FBI that Owens arrived at the YMCA around 9:15 a.m. Moore testified that Owens tried to bribe her to sign him in at an earlier time. However, Moore originally confirmed Owens's version of events, and other YMCA employees confirmed Owens's version of events.

Clothing from Kirkwood and Owens's home was sent to the FBI lab but could not be linked to the robbery. No forensic evidence could be recovered from

the bank that connected Kirkwood or Owens to the robbery. The money from the robbery, including tagged bills, was never found.

On September 19, 2007, a federal grand jury returned an indictment against Kirkwood alleging that she committed bank robbery by force or violence and aided and abetted the commission of bank robbery by force or violence, in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2, and possessed a firearm in relation to a crime of violence, in violation of 18 U.S.C. §§ 2113, 924(c)(1), and 924(c)(2). A superseding indictment was returned on August 6, 2008 alleging the same violations and joining Mark Anthony Owens as a co-defendant in the case. Count two, possession of a firearm in relation to a crime of violence, was dismissed by the government as to both defendants before trial. Both defendants pleaded not guilty and filed motions to sever, which were denied by the district court in an 8-page order on January 7, 2010.

On January 13, 2010, a jury found Kirkwood and Owens each guilty of count one of the indictment, committing bank robbery by force or violence and aiding and abetting the commission of bank robbery by force or violence, in violation of 18 U.S.C. §§ 2113(a), 2113(d), and 2. Owens was sentenced to 121 months imprisonment, and $84,755 in restitution was ordered. Kirkwood was sentenced to 110 months imprisonment, and $84,755 in restitution was ordered. The current appeal was timely filed.

II. Motions to Sever

Owens and Kirkwood argue that the district court abused its discretion in denying each of their motions to sever. According to Fed. R. Crim. P. 14(a), "[i]f the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant . . . the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." The Supreme Court has held that, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a

No. 10-40707

specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "There is a preference in the federal system for joint trials of defendants who are indicted together." *Id.* at 538.

This court reviews a denial of a motion for severance for abuse of discretion. *United States v. Lewis*, 476 F.3d 369, 383 (5th Cir. 2007) (citing *United States v. Sudeen*, 434 F.3d 384, 387 (5th Cir. 2005)). "Historically, this court has been reluctant to vacate a conviction because the district court refused to sever a trial. The defendant must 'isolate events occurring in the course of the trial and then . . . demonstrate that such events caused substantial prejudice.'" *Lewis*, 476 F.3d at 384 (citations omitted). To reverse the denial of a motion to sever, an appellant must show "specific compelling prejudice." *Id.* at 383 (citing *Sudeen*, 434 F.3d at 387). "To prevail, the defendant must show that: (1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration." *United States v. Peterson*, 244 F.3d 385, 393 (5th Cir. 2001) (citations and internal quotation marks omitted). The defendant also must show that the district court's instructions to the jury did not adequately protect him or her from any prejudice resulting from the joint trial. *United States v. Posada-Rios*, 158 F.3d 832, 863 (5th Cir. 1998) (citing *United States v. Mitchell*, 31 F.3d 271, 276 (5th Cir. 1994)).

Both Kirkwood and Owens assert that their close relationship with the other would cause the jury to impute the other's guilt upon them and that they would have been acquitted if tried separately. Specifically, they allege that the government's theory of the case (that Kirkwood used her employment at the bank to help Owens rob the bank) prevented the jury from evaluating the evidence against each of them separately. Owens explains that, "[i]t is more likely than not that the jury convicted each defendant based, not on any evidence

5

against him or her individually, but on the entire evidence presented in this case as a whole against both defendants and on the fact that each was a co-defendant to the other."

However, "[a] spillover effect, by itself, is an insufficient predicate for a motion to sever." *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002) (citing *United States v. Williams*, 809 F.2d 1072, 1085 (5th Cir. 1987) ("[A]dditional evidence adduced at joint trials does not constitute compelling prejudice by itself.")). In the present case, the district court instructed the jury that, "[t]he case of each defendant and the evidence pertaining to that defendant should be considered separately and individually. The fact that you may find one of the defendants guilty or not guilty should not control your verdict as to any other defendant." Because it is presumed that juries follow the instructions the court gives them, we assume that the evidence against each defendant was considered separately and individually. *United States v. Tarango*, 396 F.3d 666, 677 (5th Cir. 2005) (citation omitted); *Richardson v. Marsh*, 481 U.S. 200, 211 (1987). Neither Kirkwood nor Owens has offered any specific argument, other than conclusory statements, that the jury instruction given by the district court was insufficient.

This court has held numerous times that the relationship between co-defendants does not require reversing the denial of a motion to sever. *See, e.g.*, *United States v. Nguyen*, 493 F.3d 613, 625 (5th Cir. 2007) (concluding that the district court did not abuse its discretion when it denied a motion to sever filed by a defendant who was being tried with his twin brother); *United States v. Solis*, 299 F.3d 420, 441 (5th Cir. 2002) (rejecting the defendant's argument that "he was convicted on guilt by association" because he was tried with his brother); *United States v. Bermea*, 30 F.3d 1539, 1572–73 (5th Cir. 1994) (determining that the district court did not abuse its discretion by denying the appellant's motion to sever even though the appellant was tried with three family members,

one of whom pleaded guilty part way through the trial); *United States v. Partin*, 552 F.2d 621, 640–41 (5th Cir. 1977) (affirming the denial of a motion to sever where the defendant was tried with his father-in-law and brother); *see also United States v. Lira*, 262 F. App'x 653, 655 (5th Cir. 2008) (unpublished) (holding that even if some of the evidence against the appellant's husband was not relevant to the case against her, the district court did not abuse its discretion by denying the appellant's motion to sever her case from her husband's case because "the district court instructed the jury to give separate consideration of the evidence as to each defendant"). The fact that Kirkwood and Owens were living together and had been dating for three years at the time of the robbery is insufficient to warrant reversing the district court's ruling.

Additionally, Kirkwood argues that she was further prejudiced by her joint trial with Owens because Owens would have testified at her trial if their cases had been severed. Kirkwood explains that Owens had prior criminal convictions and a pending deferred adjudication that prevented him from testifying on her behalf at their joint trial. In order for Kirkwood to obtain a severance based on her desire to have Owens testify in her defense, she needed to establish: (1) a bona fide need for the testimony; (2) the substance of Owens's testimony; (3) the exculpatory effect of Owens's testimony; and (4) an indication that Owens would testify if the trial was severed. *See Nguyen*, 493 F.3d at 625 (citing *United States v. Kane*, 887 F.2d 568, 573 (5th Cir. 1989); *United States v. Nutall*, 180 F.3d 182, 187 (5th Cir. 1999)). Because Kirkwood has not demonstrated that Owens would have testified if the trial had been severed, we need not reach the other three prongs of this test. Without an affidavit from Owens or similar proof, Kirkwood cannot establish that Owens would have testified if his trial had been severed from Kirkwood's trial. *See id.* (citing *United States v. Sparks*, 2 F.3d 574, 583 & n.10 (5th Cir. 1993); *United States v. Neal*, 27 F.3d 1035, 1047 (5th Cir. 1994)). Kirkwood has not supplied such an affidavit. Kirkwood only provided an

affidavit from her attorney as evidence of Owens's willingness to testify. A statement from a defendant's attorney is insufficient to establish that the defendant's co-defendant would be willing to testify or the substance of such testimony. *Id.* (citing *United States v. Williams*, 809 F.2d 1072, 1084 (5th Cir. 1987)). Kirkwood's allegations that Owens "likely" or "possibly" would have been available to testify if he were tried before Kirkwood are insufficient to demonstrate that her motion to sever should have been granted. *See id.* (citing *Sparks*, 2 F.3d at 583 & n.10; *Neal*, 27 F.3d at 1047).

Finally, Kirkwood argues that she was prejudiced by the joint trial because evidence existed against Owens that was unrelated to Kirkwood and the specific crime charged. The jury heard about Owens's "extensive criminal background," that Owens was required to perform community service, and Owens's "weak and easily disproved alibi testimony." However, we have held that, "severance is required on the basis of a disparity in the evidence only in the most *extreme* cases." *United States v. Rocha*, 916 F.2d 219, 229 (5th Cir. 1990). "[C]ompelling prejudice is not shown if it appears that, through use of cautionary instructions, the jury could reasonably separate the evidence and render impartial verdicts as to each defendant." *United States v. Erwin*, 793 F.2d 656, 665 (5th Cir. 1986) (citation omitted).[1] In the present case, the jury was properly instructed that it should evaluate the evidence against Kirkwood and Owens separately. As noted

---

[1] Although we held in *Erwin* that the district court abused its discretion by denying a motion to sever as to one defendant, Grace Davis, and that the case was "extremely close" as to Davis's co-defendants, *Erwin* involved the admission of evidence of more egregious crimes committed by members of the conspiracy ("two kidnappings, two beatings and one killing") than those charged in the case (drug-related activities, counterfeiting, and perjury). 793 F.2d at 666. Error was found in Davis's case because "[t]he charges against her were already only peripherally related to those alleged against the other appellants" and "it became increasingly apparent that very little of the mountainous evidence was usable against her, and almost none of it applied directly." *Id.* In the instant case, Kirkwood was tried for the same charge stemming from the same incident as Owens, Kirkwood had no conspiratorial connection to Owens's past crimes, and Owens's past crimes were less severe than the current charge, armed robbery.

earlier, juries are presumed to follow the instructions given to them by the district court. *Tarango*, 396 F.3d at 677 (2005) (citation omitted)*; Marsh*, 481 U.S. at 211.  In light of the cautionary jury instruction given by the district judge, Kirkwood has offered insufficient evidence of "specific and compelling prejudice" for us to conclude that the district court abused its discretion by denying her motion to sever. *See Erwin*, 793 F.2d at 665–66 (citations omitted).

Because neither Owens nor Kirkwood has demonstrated specific compelling prejudice from the denial of their motions to sever, we conclude that the district court did not abuse its discretion denying Kirkwood's and Owens's motions to sever.

## III. Sufficiency of the Evidence

Kirkwood and Owens assert that there was insufficient evidence to sustain their convictions because the government failed to prove that each of them participated in the September 8 robbery of Texas State Bank.  They do not contest that the robbery occurred, but instead, that they were involved.  Each argues that the government only established that they could have robbed the bank and that, at best, "the evidence supports the government's theory of guilt equally to the theory of innocence."

To determine whether there was sufficient evidence to sustain a conviction, we ask whether a rational trier of fact could find proof of the essential elements of the crime beyond a reasonable doubt when viewing the evidence and drawing all inferences in favor of the verdict. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citation omitted); *United States v. Rasco*, 123 F.3d 222, 228 (5th Cir. 1997) (citations omitted).  In doing so, we do not reweigh the evidence or assess the credibility of witnesses. *Rasco*, 123 F.3d at 228.  This standard does not change regardless of whether a conviction is based on direct or circumstantial evidence. *United States v. Delagarza-Villarreal*, 141 F.3d 133, 139 (5th Cir. 1997).

No. 10-40707

## A. Kirkwood

Kirkwood argues that there is insufficient evidence to support her conviction because "alternative explanations are equally plausible for each act relied upon by the Government to prove Kirkwood's guilt." However, when we conduct a review of the sufficiency of the evidence, we must draw all inferences and view all evidence in favor of the government. *See Rasco*, 123 F.3d at 228.

There is sufficient evidence against Kirkwood for a reasonable jury to find her guilty beyond a reasonable doubt. The day before the robbery Kirkwood requested additional money for her cash drawer. Although each of the two tellers was only supposed to know half the combination to the bank's dual-combination vault, Kirkwood was able to open the vault door for the robber because she, unlike Jeanis, knew both combinations. A reasonable jury could have believed that Kirkwood conspired with the robber, obtained both combinations, and made sure that there was almost $64,000 of additional money in her drawer at the time of robbery.

In addition, Kirkwood arrived early at the bank on the day of the robbery. Such an early arrival would ensure that Jeanis and she would be the only two people in the bank at the time of the robbery. Once at the bank, Kirkwood failed to follow the bank's security procedures when she held the door open for Jeanis rather than signaling to Jeanis that it was safe for Jeanis to enter the bank. Procedure dictated that one employee enter the bank and signal to the other employee that it was safe to enter.

The government also presented evidence that a reasonable jury could interpret as evidence of Kirkwood taking steps to conceal the robber's identity after the robbery. According to Jeanis,[2] Kirkwood told Jeanis to follow the

---

[2] Because the government almost entirely bases the support for Kirkwood's conviction on the testimony of Jeanis and "we must accept credibility choices that support the jury's verdict," *United States v. Guerrero*, 169 F.3d 933, 939 (5th Cir. 1999), we assume that the jury

robber's instructions to stay on the ground after the robber exited the bank. As the government argued, the jury could reasonably have interpreted Kirkwood's statement as an attempt to prevent Jeanis from seeing the truck's license plate. Next, a reasonable jury could have inferred that Kirkwood did not relay to the 911 dispatcher the license plate number Jeanis gave Kirkwood. Though Kirkwood explains that (1) Jeanis and the dispatcher were talking to Kirkwood at the same time during the call, (2) Kirkwood was upset, and (3) Kirkwood gave the license plate number to the police when they arrived at the bank, the jury could have inferred, as the government argued, that Kirkwood was stalling to allow the robber to flee.

Finally, Kirkwood's actions and statements relating to Owens and the robbery could be inferred to be incriminating. Kirkwood testified that she heard the robber speak, did not recognize his voice, and was sure that it was not Owens's voice, even if disguised. In fact, Kirkwood testified that Owens was not the robber. In light of the evidence described below that Owens was the robber, however, as well as what Kirkwood acknowledges to be his "weak and easily disproved alibi testimony," this testimony could lead a reasonable jury to conclude that Kirkwood was untruthful. A rational jury could conclude that Kirkwood should have recognized Owens's voice considering that (1) she had been dating Owens for three years, (2) her name was on the title of Owens's motorcycle, and (3) she lived with Owens at the time of the robbery. *Id.* Furthermore, Kirkwood made and received a number of calls to and from her boyfriend, Owens, and his best friend, English, in the week before the robbery, including receiving but not answering a call from English the morning of the robbery. Although mere association or "a climate of activity that reeks of something foul" is insufficient to establish guilt, *United States v. Jackson*, 700

---

believed Jeanis was credible. *See id.*

No. 10-40707

F.2d 181, 185 (5th Cir. 1983) (citations and internal quotation marks omitted), Kirkwood's actions and statements relating to Owens are relevant to the government's theory of the case that the robbery was an "inside job."

Notably, the jury heard Kirkwood's extensive testimony that she did not rob, and chose not to accept her version of events. Notably also, Kirkwood sought relief, alleging insufficiency pursuant to Fed. R. Crim. P. 29, directly from the district court. Having presided over this trial, in its firsthand demeanor and credibility position, the district court elaborated reasons and did not grant Rule 29 relief. Viewed in the light most favorable to the verdict, there was sufficient circumstantial evidence for the jury to reasonably find Kirkwood guilty beyond a reasonable doubt.

B. Owens

Owens argues that there was insufficient evidence to convict him because, "[n]ot a single person identified Owens, found money from the offense connected with Owens, found clothes or physical evidence associated with the offense connected to Owens, or testified to inculpatory statements by Owens."

However, there is sufficient circumstantial evidence to sustain the jury's verdict of guilt. *See Delagarza-Villarreal*, 141 F.3d at 139. Kirkwood acknowledged that Owens was familiar with Texas State Bank's procedure for opening the Phelan branch and knew when Kirkwood left to pick up Jeanis early in the morning of September 8. Significantly, Courtney Moore and Daisy Johnson testified that Owens did not enter the YMCA, where he claimed he was during the robbery, until around 9:15 a.m. Moore even stated that Owens offered her money to sign him into the YMCA so it would appear as if he arrived at the YMCA at 8:00 a.m.[3] Randolph Washington testified that someone took

---

[3] Although there was other testimony, for example from Gabriel Wells, that Owens was at the YMCA before 8:00 a.m., we credit the evidence in favor of the verdict when such a contradiction exists. *Jackson*, 443 U.S. at 318 (citations omitted); *Rasco*, 123 F.3d at 228

No. 10-40707

English's truck between 5:15 a.m. and 6:00 a.m. on September 8 and that he saw Owens arrive at English's house on his motorcycle with a black backpack just before the police arrived at English's house (after the robbery and about twenty minutes before Owens entered the YMCA on foot). Jeanis and Kirkwood told investigators that the bank robber carried a black duffel bag. Anthony English, who owned the truck the government identified as the getaway truck, testified that Owens commonly borrowed English's truck and that he had left his keys on his entertainment center and left his door unlocked on September 7 while he napped. English's truck was discovered abandoned and covered with a tarp near Owens's former apartment. Owens's height and weight match the description of the robber that both Kirkwood and Jeanis gave to the police.[4]

Owens argues that the facts of the instant case are similar to the facts of *United States v. Gandolfo*, 577 F.2d 955 (5th Cir. 1978), where we held that the evidence was insufficient to uphold the conviction of one defendant, Ritter. In *Gandolfo*, we held that there was insufficient evidence to convict Ritter because multiple witnesses gave descriptions of the robbers that were extremely general and two witnesses could not identify Ritter as Gandolfo's confederate. *Id.* at 958–59. The strongest evidence against Ritter was that (1) he knew Gandolfo, (2) he fit the general physical characteristics of one of the masked robbers and an individual who rented a motel room and had a key made near the bank before the robbery, and (3) he made a large payment to bail Gandolfo's girlfriend out of jail after the robbery although he was receiving unemployment compensation

---

(citations omitted). Although the jury could have accepted Owens's verison of events that Owens had Moore alter the logs so that it would appear that he arrived in time to meet the requirements of his court-mandated community service, we view all inferences in favor of the verdict and thus assume that the jury believed the government's version of events, that Owens bribed Moore in order to establish a false alibi for the robbery.

[4] Anthony English did not match the description of the robber because he was approximately 300 pounds according to Kirkwood.

before the robbery. *Id.* We noted that the case was "wholly lacking" in "the evidence, which is so reassuring to finders of fact and appellate courts, such as fingerprints, a positive identification, possession of the bank's bait money or a confession or admission." *Id.* at 959. Ultimately, we concluded that:

> Viewing the government's case in its most favorable light, no witness or combination of witnesses either places Ritter in the savings and loan or otherwise establishes his guilt of the robbery for which he was convicted. Although his conduct and his association with Gandolfo is highly suspect vis-a-vis the bank robbery, the links are too tenuous and the gaps are too large to conclude that a reasonable mind could find Ritter guilty beyond a reasonable doubt.

*Id.*

The present case is factually distinct from *Gandolfo* in several important ways. Crucially, Owens, the jury could have concluded, gave a false alibi for his whereabouts during the robbery, and even attempted to bribe another to corroborate the false alibi. Owens was directly linked to the getaway truck, which belonged to his best friend, English. Owens often had borrowed the truck, the keys were accessible the day before the robbery, and Owens was seen before and after the robbery at English's home. Owens, therefore, had established links to the robbery that Ritter lacked. Based on this circumstantial evidence, a rational trier of fact could find beyond a reasonable doubt that Owens was the individual who robbed the bank.

VI. Motion for a Mistrial

Finally, Kirkwood argues that the district court improperly denied her motion for a mistrial. We review the denial of a mistrial for an abuse of discretion. *United States v. Elashyi*, 554 F.3d 480, 507 (5th Cir. 2008) (citing *United States v. Le*, 512 F.3d 128, 133 (5th Cir. 2007)).

Before trial, the government indicated that it did not object to Kirkwood's Motion in Limine Pursuant to Federal Rule of Evidence Rule 404(b). The district court granted Kirkwood's motion in limine, prohibiting the government from

alluding to alleged misconduct by Kirkwood before the district court ruled on the admissibility of that evidence. At trial during Kirkwood's cross-examination, Kirkwood was questioned concerning whether she knew there was a 9mm pistol in her dresser drawer, and she testified that she did not. The prosecutor then asked about what the dresser was used for and about the large box of ammunition that was found next to the gun. When the prosecutor asked if there was a digital scale next to the gun in the drawer, Kirkwood objected that the prosecutor was trying to suggest that Kirkwood was involved in questionable or illegal activities. The government responded that it was asking if Kirkwood knew what else was in the drawer, which happened to be a digital scale.

The district judge sustained Kirkwood's objection but denied Kirkwood's accompanying motion for a mistrial. The district court stated:

> I sustain your objection, I think it is improper. I think it is -- if he went any further would be highly prejudicial, but not enough for a mistrial. Overruled.
>
> Counsel, I say this on the record: I agree with counsel for the defense and I think it is the same thing as essentially holding a half bottle of bourbon whiskey sitting on the table throughout a jury trial in a DWI case without introducing it. So don't bring anything like that up again, please.

Although Kirkwood argues that the mention of the digital scale violated her Motion in Limine Pursuant to Federal Rule of Evidence Rule 404(b), the district court would only have abused its discretion in denying the motion to dismiss if "there is a significant possibility that the prejudicial evidence had a substantial impact upon the jury verdict, viewed in light of the entire record." *Elashyi*, 554 F.3d at 507 (quoting *Le*, 512 F.3d at 133) (internal quotation marks omitted). Kirkwood has not met this standard.

The motion in limine barred the government from mentioning "'any evidence of extrinsic or extraneous offense, uncharged criminal conduct,

unalleged overt acts, or specific acts of misconduct'" before serving notice to the court.   However, no evidence of a bad act was heard by the jury because Kirkwood did not endorse the prosecutor's suggestion that she had knowledge of or possessed the scale.  Kirkwood answered the government that she did not know if there was a digital scale in her dresser drawer, that she did not see one, and that one should not be there.  As the district court instructed the jury, "[r]emember that any statements, objections, or arguments made by the lawyers are not evidence."  Since jurors are presumed to follow the instructions given to them by the court, the government's reference to the digital scale would have been disregarded. *See Marsh*, 481 U.S. at 211.  The district court acted within its discretion when it chose to address any potential prejudice by sustaining Kirkwood's objection rather than granting a mistrial.

Even if, as Kirkwood argues, she was prejudiced by the reference to the digital scale, the prejudice was not so severe as to warrant a mistrial.  A photograph of the digital scale had already been entered into evidence and shown to the jury without an objection by Kirkwood.  Immediately after Kirkwood's objection to the questioning at issue, the government again showed the jury the picture of the junk drawer in which the digital scale was pictured next to the gun and ammunition.  Kirkwood did not object.  Though the digital scale was not specifically identified in the picture either time it was shown to the jury, the prejudice from an isolated question about the digital scale, with a sustained objection thereto, is not so much greater than any reaction stemming from the jury actually seeing the scale to warrant a mistrial.

Furthermore, the district court properly determined that a single reference to a digital scale, without more, was "not enough" to warrant a mistrial.  In *United States v. Le*, this court held that the mention of the defendant's parole status during opening statements, the testimony of a government witness, and closing arguments did not warrant overturning the district court's denial of a

motion for a mistrial. 512 F.3d at 134.  The court determined that, "[t]hese three references were a very small part of the trial" and that the evidence first came out during opening statements without an objection, meaning the jury already had the information that was the basis for the motion. *Id.*  As a result, we held that, "[t]he references to Le's parole status did not have a 'substantial impact upon the jury's verdict.'" *Id.* (citing *United States v. Paul*, 142 F.3d 836, 844 (5th Cir. 1998) (explaining that the defendant failed to show that the district court abused its discretion by denying the motion for a mistrial when the references at issue were "isolated remarks that were not dwelled upon by the parties")).

In the instant case, the digital scale was not mentioned again during the trial.  It was mentioned only in passing during Kirkwood's lengthy cross-examination by the government and Owens's counsel.  The reference was an isolated remark and was not dwelled upon; hence, the district court did not abuse its discretion when it denied Kirkwood's motion for a mistrial.

V. Conclusion

The district court did not abuse its discretion when it denied Kirkwood's motion to sever, Owens's motion to sever, and Kirkwood's motion for a mistrial. There was sufficient evidence to support the jury's decision to convict Kirkwood and Owens.  We AFFIRM both Owens's and Kirkwood's convictions.