**UNITED STATES of America,**
**Plaintiff–Appellee**

v.

**Jose Gabriel SALAZAR–MEDINA,**
**Defendant–Appellant.**

**No. 13–50071.**

United States Court of Appeals,
Fifth Circuit.

July 3, 2014.

Joseph H. Gay, Jr., Assistant U.S. Attorney, Angela Sandoval Raba, Assistant U.S. Attorney, U.S. Attorney's Office, San Antonio, TX, for Plaintiff–Appellee.

Donna F. Coltharp, Assistant Federal Public Defender, Federal Public Defender's Office, San Antonio, TX, for Defendant–Appellant.

Before KING, HAYNES, and GRAVES, Circuit Judges.

PER CURIAM: *

Jose Gabriel Salazar–Medina ("Salazar") pleaded guilty to conspiracy to possess with intent to distribute marijuana, and he was sentenced to a 72–month term of imprisonment and to a five-year period of supervised release. Salazar appeals the district court's determination that his sentence should be enhanced because it found that Salazar acted as an "organizer, leader, manager, or supervisor" under the U.S. Sentencing Guidelines (the "Guidelines") for a group of men who were apprehended carrying marijuana across the international border near Del Rio, Texas. We VACATE the sentence and REMAND for resentencing.[1]

**I.   Procedural and Factual Background**

United States Border Patrol agents (the "agents") witnessed four individuals walking away from the Rio Grande River. An agent operating a Loriscope located four individuals who appeared to be carrying large bundles on their backs. Border Patrol canine alerted to the scent; thereafter, the agent was able to follow the trail of the

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1.  Salazar does not challenge his conviction; we leave the judgment of conviction undisturbed.

four individuals. When the agents confronted the individuals, they dropped the bundles and began to flee, but the agents apprehended the four individuals, including Salazar, and recovered their packs, which contained 37.6 kilograms of marijuana.

After his arrest, Salazar admitted having entered the United States illegally, and he admitted to being involved in a conspiracy to possess marijuana. Salazar was charged with and pleaded guilty to conspiracy to possess with intent to distribute more than 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. The three other individuals apprehended at the same time as Salazar were also charged.

The Presentence Report ("PSR") indicated that the three other individuals told the agents that Salazar acted as the sole guide for the group, but Salazar indicated that a "fifth man" led the group. Based on the PSR, Salazar's base offense level was 26, but since he was identified as the guide by his three codefendants, the PSR added a two-level adjustment to Salazar's offense level, under section 3B1.1(c) of the Guidelines, which prescribes an adjustment if the defendant is "an organizer, leader, manager, or supervisor." *See* U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 3B1.1(c) (2011). Salazar was also given a three-level reduction for accepting responsibility; therefore, his total offense level was calculated at 25. Based on his criminal history and his total offense level of 25, Salazar's guideline range for imprisonment was calculated as 70 to 87 months. Salazar objected to the two-level enhancement for being an organizer, leader, manager, or supervisor. His objection was overruled, and he was sentenced to 72 months.

During Salazar's sentencing, two codefendants[2] testified as did several law enforcement officials. Co-defendant Juan Jose Garza–Saucedo, who had already been sentenced, said that there were additional people on the Mexican side, that it was the middle of the night, and that he was unsure of whether anyone crossed ahead of them. He also said that as far as he knew, Salazar was not in charge, that Salazar never ordered him to do anything, and that he did not organize anything.

Co-defendant David Bram–Gonzalez, who had pleaded guilty but had not yet been sentenced, testified that there was a fifth man, that Salazar was not in charge of anything, and that they were just walking behind him.

Agent Jeremy Bacon with Immigration and Customs Enforcement ("ICE") testified on cross-examination that the others said Salazar was the guide, but conceded that guide meant to him that they were merely following Salazar and that he just "assumed that [Salazar] was in charge."

Agent Adrian Martinez with Border Patrol testified on cross-examination when asked whether anyone indicated that Salazar was the organizer or leader of the group: "Not in so many words; but when I asked them where they were taking the narcotics to, none of the three knew. They said that Salazar–Medina was the one that knew where they were to take it." Then he said: "They didn't exactly say he organized it or he ordered, gave orders; but they stated that Salazar–Medina was the only one in the group who knew where they were going to take it."

Agent Daniel Martinez–Lopez with the Drug Enforcement Agency ("DEA") testified that Salazar told him in his interview that there was a fifth man who was the guide and who ran off after Border Patrol

---

**2.** The third co-defendant refused to testify,    citing his Fifth Amendment rights.

found them. He also said that he did not interview the three co-defendants, and, thus, did not ask them about the fifth man.

Agent Santos Izeta with Border Patrol testified that he was working the Loriscope truck. The Loriscope detects heat. After devices along the river were triggered, Izeta set up approximately two miles away from the river. Just after 1 a.m., he saw four individuals come up the banks of "kind of a creek," walking north. In other words, two miles away from the Rio Grande River and over an hour after the defendants had been in the brush, Izeta picked them up with the scope. Nobody saw the defendants until they were approximately two miles away from the Rio Grande River, and even at that time officials could not see them well enough to tell whether they were even carrying backpacks. Izeta then tracked those four individuals for an hour. Izeta offered no testimony that he scanned any surrounding areas or looked to see if there was someone who had gone ahead. He testified that he kept the scope on the first individual of the four "the whole time," but could not see well enough to identify whether it was Salazar. On cross examination, Izeta testified that he did not know what happened during the hour the men had been in the brush and admitted that there could have been a fifth individual that he did not see.

After hearing all the testimony, the district court found the testimony of Salazar's codefendants to be "less than compelling." The district court expressed disbelief that the four defendants would have followed a fifth individual, whom they had supposedly only seen for an instant, and that they would have known the path because he was leaving a trail using signs. Salazar argued that the evidence only showed the individuals involved were following one another, especially since the codefendants indicated that Salazar never gave orders or instructions of any kind. The district court indicated, however, that an individual need not provide verbal instructions to warrant an enhancement. Salazar appeals, contending that the district court erred by applying the enhancement.

## II. Discussion

A district court's factual findings are reviewed for clear error. *United States v. Delgado,* 672 F.3d 320, 344 (5th Cir.) (en banc), *cert. denied,* —— U.S. ——, 133 S.Ct. 525, 184 L.Ed.2d 339 (2012). There is no clear error if the district court's finding is plausible in light of the record as a whole. *United States v. Gonzales,* 436 F.3d 560, 584 (5th Cir.2006). We defer to the district court's credibility findings. *United States v. Perez,* 217 F.3d 323, 331–32 (5th Cir.2000). On the other hand, whether a set of facts supports a particular enhancement—a question which requires interpretation of the Guidelines—is a question of law we review de novo. *United States v. Le,* 512 F.3d 128, 134 (5th Cir. 2007) (interpretation of the Guidelines is a question of law reviewed de novo); *see also United States v. Ho,* 311 F.3d 589, 610 (5th Cir.2002).

Salazar argues that the evidence did not support the role adjustment under section 3B1.1 because he did not recruit members, organize the group, nor did he supervise or manage the codefendants. He also contends that there is no evidence that he exercised any discretion or decision-making authority. He argues, therefore, that his actions do not align with the factors in the Sentencing Guideline's Commentary Note 4 ("Note 4") that, he contends, are used to determine whether a defendant should be considered an organizer, leader,

manager, or supervisor.[3] In unpublished decisions, we have previously held that Note 4 is to be used in distinguishing the prior two subsections of 3B1.1 and is not dispositive of the determination of whether a particular defendant should receive an enhancement under section 3B1.1(c). *See United States v. Hooker,* 509 Fed.Appx. 290, 291 (5th Cir.2013) (unpublished); *United States v. Claiborne,* 489 Fed.Appx. 757, 758 (5th Cir.2012) (unpublished). Understanding that the purpose of this guideline is to determine whether the defendant played an aggravating role in the offense, however, we have used the factors in Note 4 as aids in the determination of whether an individual is an organizer, leader, manager, or supervisor of criminal activity. *See, e.g., United States v. Ceballos–Amaya,* 470 Fed.Appx. 254, 261–62 (5th Cir. 2012) (unpublished).

We need not decide here the degree to which the Note 4 factors must be met to warrant an adjustment, because we conclude that the evidence, weighing all credibility determinations in favor of the district court's finding, does not support a legal conclusion that Salazar's act of "guiding" the others rendered him a "leader" within the meaning of section 3B1.1(c). The testimony is clear that Salazar was merely walking in front at times and may have been familiar with the area, but he was no more than a "mule" like the other three. Merely walking ahead of the others, and even "knowing the way," is not sufficient, without more, to render Salazar a "leader," even assuming the absence of a "fifth man." Nothing in section 3B1.1(c)

supports the legal conclusion that a "guide" who "knows the way" is the legal equivalent of a "leader" sufficient to support the enhancement. Accordingly, we conclude that the district court erred in assessing a two-level enhancement. Neither party contends that this error was harmless. Therefore, we VACATE the sentence and REMAND for resentencing consistent with this opinion.

Sentence VACATED and REMANDED.

---

**3.** Note 4 states that:

In distinguishing a leadership and organizational role from one of mere management or supervision, titles ... are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of ac-

complices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
U.S.S.G. § 3B1.1 cmt. n. 4.