# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 5, 2010

No. 08-50186

Charles R. Fulbruge III
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee

v.

ISIDRO GARZA, JR; TIMOTEO GARZA; MARTHA CATALINA GONZALEZ
GARZA,

Defendants–Appellants

Appeal from the United States District Court
for the Western District of Texas

Before HIGGINBOTHAM, GARZA, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Defendants–Appellants Isidro Garza, Jr., Timoteo Garza, and Martha Catalina Gonzalez Garza[1] (collectively "Defendants") appeal their convictions for crimes relating to the embezzlement of hundreds of thousands of dollars belonging to the Kickapoo Traditional Tribe of Texas (the "Tribe") and the Lucky Eagle Casino (the "Casino"). Defendants argue that the district court erred by *sua sponte* transferring their case from the Del Rio Division of the Western District of Texas to the Waco Division in violation of Federal Rule of Criminal

---

[1] Defendant–Appellant Arthur Lee Martin died on May 31, 2008. We dismissed his appeal as moot and ordered the district court to vacate his indictment and judgment of conviction.

Procedure 18. Because the district court in Del Rio provided no reasoning when it transferred Defendants' case, we vacate Defendants' convictions and remand for a new trial in a venue determined in accordance with the dictates of Rule 18.

## I. FACTUAL AND PROCEDURAL HISTORY

In 1996, the Tribe hired Defendant Isidro Garza to serve in various managerial capacities within the Tribe and the Casino. The Tribe also placed Isidro's wife Martha and their son Timoteo on the Tribe's payroll. The Tribe entrusted Isidro with the Casino's operating accounts and the Tribe's Casino Revenue Fund, and instructed Isidro to deposit the Casino's net profits and spend the funds for the benefit of the Tribe.

The Government alleges that Isidro used the Casino's operating account for personal expenditures, which included making donations to political campaigns in order to curry favor for his and Timoteo's political aspirations. The Government charged Defendants and four others with various offenses relating to the misappropriation of tribal funds.

The Tribe and the Casino are located on a reservation in Maverick County, Texas. Defendants, none of whom belongs to the Tribe, reside in Eagle Pass, Texas, the city closest to the Tribe's reservation. At the time of the trial, every Defendant lived in Eagle Pass, many of the defense witnesses resided on or near the reservation, and most of Defendants' original counsel had their principal places of business in, or near, Eagle Pass. All of the events leading to the indictments occurred in Eagle Pass, on the reservation, or in the Casino.

A judge in the Del Rio Division of the Western District of Texas (the "Del Rio Judge") originally presided over Defendants' case. Defendants alleged that the Del Rio Judge had political ties to a potential defense witness, and based on that allegation, Isidro filed a "Motion to Transfer, or Alternatively, to Disqualify and for Hearing." Isidro asked the Del Rio Judge to transfer the case to San Antonio because a judge in that city (the "San Antonio Judge") had previously

2

heard a civil matter involving substantially the same parties and issues. Timoteo, Martha, and the other defendants moved to join Isidro's motion.

The Del Rio Judge simultaneously granted Defendants' motion to join and denied the joint motion to transfer. A few months later, Defendants renewed their arguments for the Del Rio Judge's disqualification. The Del Rio Judge conducted an *in camera* hearing and then ordered Defendants to file another motion to disqualify within twenty-four hours.

Defendants timely filed the motion to disqualify. Before ruling on any motions, the Del Rio Judge *sua sponte* issued an order transferring the case and all pending motions to the Chief Judge for the Western District of Texas, who sits over three hundred miles away in Waco. The Del Rio Judge did not rule on the motion to disqualify, and her order gave no reason for the transfer. The Chief Judge, *sua sponte* and without a hearing, accepted the transfer and ordered that the trial would be held in Waco. In response, Defendants filed a motion to re-transfer their case either back to Del Rio or to San Antonio.

The Chief Judge conducted a hearing on Defendants' motion, and asked why they requested a transfer back to Del Rio after they had sought to move the case to San Antonio. Defendants responded that their sole concern was disqualification of the Del Rio Judge based on her alleged bias. Defendants then argued that neither they, nor their witnesses, nor their counsel could afford to travel to Waco for the trial.

The Chief Judge denied the motion to re-transfer, noting that the Waco Division "is a one court division and it is a busy division," and that as Chief Judge, moving the trial to Del Rio would bring "great hardship on me personally and on the work of this Court and this district." The Chief Judge allowed several attorneys to withdraw from representing Defendants on grounds of economic hardship due to the transfer, and appointed replacement counsel. To allow the new attorneys the chance to prepare, the Chief Judge granted a continuance that

delayed the trial for several months. Although the Chief Judge offered the court's subpoena power to assist Defendants in securing witnesses, the majority of Defendants' proffered defense witnesses did not testify at trial.

After a nine-day joint trial, the jury found Isidro and Timoteo guilty of multiple counts of conspiracy to commit the offenses of theft from an Indian tribal organization, in violation of 18 U.S.C. § 371, and theft by officers or employees of gaming establishments on Indian lands, in violation of 18 U.S.C. § 1168. The jury found Martha and Isidro guilty of various acts of tax evasion, in violation of 26 U.S.C. § 7201. The jury found Martha, Isidro, and Timoteo guilty of conspiracy to evade the payment of taxes, in violation of 18 U.S.C. § 371. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the final judgment of the district court in this criminal case under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291, and review "all questions concerning venue under the abuse of discretion standard." *United States v. Lipscomb*, 299 F.3d 303, 338 (5th Cir. 2002). "[A] trial court abuses its discretion when the judge has considered the wrong factors in applying his discretion (the judgment call was made as to issues or factors not within the scope of his discretionary powers)." *Id.* at 339 (internal quotation omitted). Although a trial court has "broad discretion in deciding where to fix the location of the trial," it must give "'due consideration' to the factors listed in Rule 18." *United States v. Balistrieri*, 778 F.2d 1226, 1229 (7th Cir. 1985) (citing *United States v. Truglio*, 731 F.2d 1123, 1130 (4th Cir. 1984)).

## III. ANALYSIS

On appeal, Defendants argue that the Del Rio Judge abused her discretion by *sua sponte* transferring Defendants' case to Waco without considering Rule 18. Defendants also argue that the Chief Judge abused his discretion by *sua sponte* accepting the Del Rio Judge's transfer. Finally, Defendants argue that

the Chief Judge abused his discretion by refusing to grant their motion to re-transfer either back to Del Rio or to San Antonio.

In response, the Government argues that we should characterize the Del Rio Judge's transfer as a recusal, making Rule 18 irrelevant. Additionally, the Government argues that the Chief Judge did not abuse his discretion by denying Defendants' motion to re-transfer the case either back to Del Rio or to San Antonio.

## A. The Del Rio Judge's Order

As a threshold matter, we must decide whether the Del Rio Judge transferred Defendants' case or implicitly recused herself. Although the Government argues that we should treat her order as a recusal followed by a reassignment, the Del Rio Judge denied Defendants' first motion for recusal and "ordered that the clerk immediately *transfer*" the case. (emphasis added). Additionally, the Chief Judge stated that "[t]his case has been *transferred* from the Del Rio Division," and later denied Defendants' motion for disqualification of the Del Rio Judge because "[t]he case has been *transferred* from the docket of the [Del Rio Judge]. Therefore, Defendants' motion is moot." (emphasis added).

Further, a recusal by the Del Rio Judge would have barred her from issuing the order transferring the case to the Chief Judge. Issuing any order after a recusal "would violate the congressional command that the disqualified judge be removed from all participation in the case . . . [and would] create suspicion that the disqualified judge will select a successor whose views are consonant with his [or hers]." *McCuin v. Tex. Power & Light Co.*, 714 F.2d 1255, 1261 (5th Cir. 1983).[2] We find that the Del Rio Judge *sua sponte* transferred

---

[2] *See also United States v. Rea-Tapia*, 134 F. App'x 711, 713 n.5 (5th Cir. 2005) (per curium) (unpublished) (noting that a judge "would not have been permitted to enter *any* orders after granting the defendant's recusal motion") (emphasis added).

Defendants' case, and did not implicitly recuse herself. Therefore, Rule 18 applies.

The unique procedural history of this case warrants making one further point. Although Defendants sought a re-transfer from Waco to Del Rio or San Antonio, originally they requested a transfer from Del Rio to San Antonio. This prompted the Chief Judge, upon hearing their request for a re-transfer, to comment "[y]ou all fought for years to have this matter moved to San Antonio. Now you're saying it should be in Del Rio?" In response, Defendants argued that they sought the transfer solely to avoid having their case tried by the Del Rio Judge due to her alleged bias.

The record supports this contention. Defendants' motion to transfer specifically requested that the Del Rio Judge only consider transferring the case to San Antonio, because the San Antonio Judge had heard a civil matter involving substantially the same parties and issues. Defendants have demonstrated that their sole concern was separating the Del Rio Judge from her involvement in their case.

The Del Rio Judge's *sua sponte* transfer and the Chief Judge's *sua sponte* acceptance left Defendants with no opportunity to challenge the transfer until they filed a motion to re-transfer. Defendants' vigorous attempts to re-transfer their case from Waco at their earliest opportunity convince us that they would have opposed the transfer earlier if given the chance.

## B. Abuse of Discretion

Defendants argue that the Del Rio Judge abused her discretion when she *sua sponte* transferred Defendants' case from Del Rio to Waco. Federal Rule of Criminal Procedure 18 states:

> Unless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court shall fix the place of trial within the district

with due regard to the convenience of the defendant and the witnesses and the prompt administration of justice.[3]

As the Eleventh Circuit has noted, "a district judge's exercise of discretion resulting in a trial in an environment alien to the accused over a proper objection must be supported by a demonstration in the record that the judge gave due regard to the factors now incorporated in Rule 18." *United States v. Burns*, 662 F.2d 1378, 1383 (11th Cir. 1981).

The Del Rio Judge gave no reason for her *sua sponte* transfer of Defendants' case from Del Rio to Waco. Given her denial of Defendants' disqualification motions and their original motion to transfer the case to San Antonio, we can do little more than speculate as to the motivation for the transfer. The record provides no indication as to whether the Del Rio Judge considered the "convenience of the [D]efendant[s]" or the "prompt administration of justice." FED. R. CRIM. P. 18.

Our weighing of the "convenience of the [D]efendant[s]" against the "prompt administration of justice" advises against transfer to Waco. *See id.* In assessing convenience, we consider: (1) the distance from the defendant's home, *Lipscomb*, 299 F.3d at 340; *Dupoint v. United States*, 388 F.2d 39, 44 (5th Cir. 1967); (2) the location of the defendant's witnesses, *Lipscomb*, 299 F.3d at 340; *United States v. Stanko*, 528 F.3d 581, 586 (8th Cir. 2008); and (3) the ability of the defendant's family and friends to attend the trial. *Stanko*, 528 F.3d at 586. We have also acknowledged that the burden on a defendant increases when a transfer forces the defendant's counsel to try a case far from his or her practice. *See Lipscomb*, 299 F.3d at 340 (noting the location of the defense attorney's practice when considering convenience).

---

[3] Effective December 1, 2008, Rule 18 requires courts to consider the convenience of the venue to any victim. Because the amendment was not effective at the time of Defendants' trial, we apply the prior Rule. We note, however, that this rule change would not affect the analysis in this case.

Defendants, their witnesses, and their counsel all reside in or around Eagle Pass or the Tribe's reservation. The transfer to Waco required every interested party to travel more than three hundred miles to participate in the trial. Additionally, the transfer required defense counsel—those who chose not to withdraw due to financial hardship stemming from the transfer—to hold a multiple-day trial far from their practices. Although the Chief Judge appointed Defendants new counsel, the original attorneys invested substantial time, money, and energy in crafting their defense. Duplicating these efforts increased the burden on Defendants. We rarely see a case in which the convenience factor weighs so heavily against transfer.

In contrast, this transfer does not clearly benefit "the prompt administration of justice." FED. R. CRIM. P. 18. We have held that Rule 18's "second textual factor—'due regard to . . . the prompt administration of justice'—is in part a literal command that trials comply with the Speedy Trial Act." *Lipscomb*, 299 F.3d at 341 (internal citation omitted). Courts must "weigh the impact the trial location will have on the timely disposition of the instant case." *In re Chesson*, 897 F.2d 156, 159 (5th Cir. 1990) (per curiam). This factor "includes more than the case at bar; the phrase includes the state of the court's docket generally." *Id.*

The transfer of this case, particularly the loss of Defendants' chosen counsel, resulted in substantial delay. The Del Rio Judge transferred the case from Del Rio on May 2, 2006, but the trial in Waco did not begin until October 1, 2007. The lengthy continuance that the Chief Judge granted after appointing replacement defense counsel caused this delay, and we find nothing suggesting that a trial in Del Rio would have resulted in a similar postponement. Additionally, nothing in the record suggests that docket concerns prompted the transfer from Del Rio to Waco. Although the Chief Judge asserted that re-

transfer from Waco would disrupt his docket, the record does not suggest that the Del Rio Judge considered her own docket before ordering the transfer.

In *Lipscomb*, the district court ordered a *sua sponte* transfer from Dallas to Amarillo based on the district court's concern over pretrial publicity that would accompany "the trial of one of the best[-]known sitting elected officials in the Dallas/Fort Worth metroplex for allegations of public corruption." 299 F.3d at 337 (alteration in original). After conducting an independent analysis of the district court's transfer order and finding that the "facts of convenience militate exclusively *against* transfer," we could "detect virtually nothing on the Rule 18 scale to counterbalance the defendant's established inconvenience." *Id*. at 348. Given the district court's failure to consider the factors enumerated in Rule 18, we had no choice but to find an abuse of discretion and vacate the defendant's conviction. *See id*. at 348–49.

*Lipscomb* binds our analysis in this case. In *Lipscomb*, the district court provided a thorough and reasoned order, but failed to give due consideration to the appropriate factors. *See id*. In this case, however, the Del Rio Judge has provided no rationale that would allow us to conduct the type of review necessary to affirm such an inconvenient *sua sponte* transfer. Because of this lack of reasoning, we have no choice but to find that the Del Rio Judge abused her discretion, and to vacate Defendants' convictions.

## IV. CONCLUSION

At the time of the *Lipscomb* decision, we described that case as a "true outlier in the Rule 18 jurisprudence." *Id*. The circumstances of the instant case suggest that it too falls outside the realm of Rule 18 normalcy. Our holding is limited to the rare instances where the district judge orders a transfer, *sua sponte* and over a defendant's objection, and fails to give due consideration to Rule 18 when those factors overwhelmingly advise against transfer.

9

Accordingly, we vacate Defendants' convictions and remand for a new trial in a venue determined in accordance with Rule 18.[4]

VACATED and REMANDED.

---

[4] Defendants also argued that the district court improperly excluded evidence that the Traditional Council of the Tribe authorized some of the expenditures that led to their convictions. In light of the remand, we need not address this argument.