# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 09-41207

United States Court of Appeals
Fifth Circuit

**FILED**

April 8, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MARIANO ALVAREZ; EDEN FLORES, SR.; ABRAHAM HERNANDEZ; GUADALUPE HERNANDEZ, also known as Lupe,

Defendants - Appellants

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 7:07-CR-144

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

Appellants Mariano Alvarez, Eden Flores, Sr., Abraham Hernandez (Abraham), and Guadalupe Hernandez (Guadalupe) appeal their convictions for drug trafficking, money laundering, and conspiracy. Appellants also challenge various rulings made by the district court before and during trial.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-41207

Abraham challenges his sentence. For the following reasons, we affirm on all issues.

## I.

Appellants and various other co-defendants were charged with, *inter alia*, conspiracy to possess with intent to distribute cocaine, money laundering, and possession of firearms in furtherance of a drug trafficking offense.[1] The conspiracy activities included smuggling narcotics via UPS shipments and modified air tank cylinders, and transporting and laundering large amounts of money.

Alvarez, Flores, Guadalupe, and Abraham entered pleas of not guilty on August 7, 2008.  A jury trial commenced on November 5, 2008. After several days of deliberation, the foreperson informed the district court that a juror had brought extrinsic evidence into the deliberation proceedings. The district court *sua sponte* declared a mistrial and transferred the case to Houston for retrial.

Retrial commenced on July 6, 2009. On July 21, 2009, the jury found Alvarez guilty of counts one, two, three, five, and six. Alvarez was sentenced to concurrent life terms of imprisonment on counts one and six, concurrent 240-month terms of imprisonment on counts two, three, and five, and supervised release. Alvarez was further ordered to pay mandatory assessments totaling $500 and a $1,000,000 fine. Flores was found guilty of counts one, two, and six. Flores was sentenced to concurrent life terms of imprisonment on counts one

---

[1] The various co-conspirators were charged with: conspiracy to possess with intent to distribute more than five kilograms of cocaine (count one), conspiracy to commit the offense of money laundering (count two), money laundering (count three), possession with intent to distribute one kilogram of cocaine (count four), money laundering (count five), possession with intent to distribute 217 kilograms of cocaine (count six), money laundering (counts seven and eight), possession with intent to distribute three kilograms of cocaine (count nine), unlawful possession of a firearm by a convicted felon (count ten), possession of firearms in furtherance of a drug trafficking offense (count eleven), and possession of a short-barreled rifle (count twelve).

No. 09-41207

and six and a 240-month term of imprisonment on count two, followed by concurrent life and three-year terms of supervised release. Flores was also ordered to pay mandatory assessments totaling $300 and a $1,000,000 fine. Guadalupe was found guilty of counts one and six. Guadalupe was ordered to serve concurrent 360-month terms of imprisonment followed by concurrent life terms of supervised release. Guadalupe was ordered to pay mandatory assessments totaling $200. Abraham was found guilty of counts one and two. Abraham was ordered to serve concurrent 252-month terms of imprisonment followed by concurrent five-year terms of supervised release. The court imposed mandatory assessments totaling $200. This appeal followed.

## II.

**Mistrial and double jeopardy**

The jury began its deliberations in the first trial on November 24, 2008. After three days of deliberation, the jury submitted the following note: "We cannot agree on a unanimous verdict. Please advise." In a written response, the district court asked the jury to continue its deliberations, stating that the trial had lasted for two weeks but the jury had only been deliberating for three days, and that it was not unusual for deliberations to last longer than three days. Following the district court's response, the jury continued its deliberations. The jury submitted several other substantive notes to the court after deliberations resumed.

On December 5, 2008, the jury submitted a note asking that the district court meet with the foreperson. The foreperson informed the district court that on the previous day a juror asked whether a person could walk into a UPS store and get a shipping label. The next morning, the juror informed the rest of the jury that the night before he had gone to a UPS store and was able to obtain a UPS shipping label. On December 6, 2008, the district court held a status conference with Appellants' counsel. After questioning by the district court, the

juror was disqualified. The district court informed counsel that the alternate was available to start deliberations after the weekend break. The district court stated that it would also admonish the jury to not consider statements made by the disqualified juror. Counsel for Flores and Alvarez expressed concern over seating an alternate juror. Abraham's counsel objected to the juror's disqualification and the district court overruled the objection. Each Appellant's counsel objected to proceeding with 11 jurors. Flores's counsel moved for a mistrial, a motion the judge deemed premature. The district court recessed for the weekend.

On December 8, 2008, the district court convened a second status conference and again asked the parties how they wished to proceed in light of the disqualified juror. The government requested that jury deliberations proceed with the alternate juror. Flores did not renew his motion for a mistrial, and he and Alvarez expressed their desire to proceed with the alternate juror. Guadalupe requested that deliberations proceed with 11 jurors. Abraham moved for a mistrial, citing the length of deliberations in light of the "simplicity" of the case. The district court declined to rule on Abraham's motion.

Rather, the district court granted a mistrial on the grounds of "manifest necessity." The district court found that the juror's misconduct likely "tainted the jury as a whole." It also found that the jury appeared to be confused because it had been deliberating for over two weeks, and that the jury would not likely reach a verdict.  The district court then indicated that it was transferring the case for retrial in the Houston division. None of the Appellants objected to the district court's declaration of a mistrial.

On appeal, Alvarez argues that his conviction must be vacated because it was obtained in violation of his right to be free from double jeopardy. He asserts that the jury was not "hopelessly deadlocked," and that the district

court should have granted his motion to dismiss the indictment on double jeopardy grounds, which he filed prior to the start of the second trial. Alvarez contends that the district court abused its discretion in declaring a mistrial as it was not manifestly necessary. The government argues that the district court did not abuse its discretion when it declared a mistrial. The government asserts that the jury was confused based on the number of jury notes, and felt that the extrinsic evidence introduced by a juror had a significant influence on the jury as a whole. The government points out that the FBI later discovered that the disqualified juror was discussing the case with Abraham and Guadalupe during the trial, and thus the district court's "intuition" was correct.

The district court's decision to grant a mistrial is reviewed for abuse of discretion. *United States v. Coveney*, 995 F.2d 578, 584 (5th Cir. 1993) (citations omitted). The Double Jeopardy Clause will not preclude a defendant from being retried after the district court declares a mistrial over defense objection if the mistrial was justified by "manifest necessity." *United States v. Campbell*, 544 F.3d 577, 580-81 (5th Cir. 2008). If a defendant consents to a mistrial, the "manifest necessity" standard is inapplicable and double jeopardy ordinarily will not bar a reprosecution. *See United States v. El-Mezain*, 664 F.3d 467, 559 (5th Cir. 2011).

"The defendant's consent to a mistrial may be express or implied through a failure to object." *Id*. If a defendant fails to timely and explicitly object to a mistrial declaration, he is "held to have impliedly consented to the mistrial and may be retried in a later proceeding." *United States v. Palmer*, 122 F.3d 215, 218 (5th Cir. 1997). "The determination of whether a defendant objected to a mistrial is made on a case-by-case basis, and the critical factor is whether a defendant's objection gave the court sufficient notice and opportunity to resolve the defendant's concern." *El-Mezain*, 664 F.3d at 559 (citing *United States v.*

*Fisher*, 624 F.3d 713, 717 (5th Cir. 2010)); *see also United States v. Nichols*, 977 F.2d 972, 974 (5th Cir. 1992) (finding that consent to a mistrial may be implied from the totality of circumstances surrounding the declaration of the mistrial); *United States v. Williams*, 985 F.2d 749, 755 (5th Cir. 1993) ("In determining the sufficiency of objections we apply the general principle that an objection which is ample and timely to bring the alleged. . . error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to. . . preserve the claim for review." (internal quotation marks and citations omitted)).

Alvarez did not explicitly object to the mistrial or provide the district court with notice and opportunity to address the double jeopardy concerns he now raises on appeal. "A prior expression of a desire to continue the trial will not save a defendant from the implied consent doctrine," including a defendant's expressed desire to proceed to a verdict prior to the district court's declaration of a mistrial. *Palmer*, 122 F.3d at 219; *see also United States v. Benjamin*, 129 F. App'x 887, 889 (5th Cir. 2005) (finding defendant impliedly consented to mistrial when he "did not contemporaneously and expressly object" to the district court's declaration of a mistrial, but rather filed a "'motion to bar retrial on grounds of double jeopardy' nearly two weeks after the trial court declared a mistrial"). "[W]e must insist upon express objections." *Palmer*, 122 F.3d at 219. Alvarez indicated to the court that he would like to proceed to a verdict, but this is distinct from raising a double jeopardy concern before the district court. Indeed, after the district court declared a mistrial, Alvarez suggested retrial in a venue other than Houston rather than objecting to the mistrial. *See Nichols*, 977 F.2d at 974 (finding implied consent to mistrial despite defendant's expression of displeasure at possibly retrying the case because defendant did not make an express objection and "implied his consent to the retrial by failing to object to the mistrial and by rescheduling the new

trial"). As such, he impliedly consented to the mistrial and double jeopardy does not bar his retrial. *See El–Mezain*, 664 F.3d at 559; *Palmer*, 122 F.3d at 218. The district court did not err in denying Alvarez's motion to dismiss the indictment.

**Intradistrict transfer**

During the December 8, 2008 status conference and after the district court granted a mistrial, it *sua sponte* transferred the case from the McAllen division to the Houston division. On February 26, 2009, the court held a status conference in advance of the second trial. During the conference, the district court stated that it could "move cases within division *sua sponte* for whatever reason, and that's what I choose to do." Counsel for Alvarez asked that the court consider the Corpus Christi division because it was closer to McAllen. The district court declined this request and gave the parties two weeks to file any additional motions. None of the Appellants filed a motion for recusal or other written objections to the transfer order.

We review questions of venue for an abuse of discretion. *United States v. Asibor*, 109 F.3d 1023, 1037 (5th Cir. 1997). A district court generally abuses its discretion when it "bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Esmark Apparel, Inc. v. James*, 10 F.3d 1156, 1163 (5th Cir. 1994). Federal Rule of Criminal Procedure 18 governs intradistrict transfers:

> [u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice.

In addition to considerations of convenience and prompt administration, the district court may also consider factors such as speedy trial, docket management, logistics, and pretrial publicity. *See United States v. Lipscomb*, 299 F.3d 303, 340-344 (5th Cir. 2002). The district court has "broad discretion in determining whether [an intradistrict] transfer is warranted." *United States v. Alvarado*, 647 F.2d 537, 539 (5th Cir. Unit A June 1981). "Reversal is proper only where a party demonstrates a 'substantial ground for overturning the district court's [decision regarding an] intradistrict transfer.'" *United States v. Dickie*, 775 F.2d 607, 609 (5th Cir. 1985), abrogated in part on other grounds by *United States v. Calverly*, 37 F.3d 160, 164 & n.27 (5th Cir. 1994), (quoting *United States v. Malmay*, 671 F.2d 869, 876 (5th Cir.1982)).

Appellants rely on *United States v. Garza*, 593 F.3d 385, 389-91 (5th Cir. 2010), where the district court similarly transferred the case to another district sua sponte without giving any reasons. In *Garza*, however, we conducted out own weighing of the Rule 18 factors and concluded that the transfer resulted in substantial delay and inconvenience. *See id.* Here, by contrast, Appellants fail to establish that the Rule 18 factors weighed against transfer. Appellants argue that the district court's transfer to Houston was inconvenient because the trial was moved over 300 miles from where the parties and their counsel resided. This factor alone is insufficient to reverse the district court's decision to transfer venue. *See United States v. Fagan*, 821 F.2d 1002, 1008 (5th Cir. 1987) (finding that a refusal to transfer outside of district was inconvenient but did not itself establish prejudice). Moreover, while it is true that the location was less convenient for the parties, it does not appear to have hindered the Appellants' ability to present their defenses. At oral argument, counsel argued that the Houston location prevented the parties from calling witnesses, however none of the Appellants called any witnesses during their first trial located in McAllen. The district court further maintained the prompt

administration of justice, indicating that it would set the case for trial within a matter of months in order to preserve the witnesses' availability, and so that events would stay fresh in the witnesses' minds.

Although many conspiracy activities occurred in the McAllen division, various drug trafficking and money laundering activities occurred elsewhere in the district, including Houston, and even outside the district, including in Dallas, Texas and Atlanta, Georgia. "[B]ecause venue exists anywhere within the judicial district in which the crime was committed, there is no right to trial within a particular division in a district." *United States v. Weddell*, 800 F.2d 1404, 1406 (5th Cir.), *amended on other grounds by* 804 F.2d 1343 (5th Cir. 1986).

Appellants also assert that there were significant differences in the racial make-up of the jury pools. Specifically, that the jury pool in McAllen was predominantly Hispanic and made up of the Appellants' "peers," and that there was no need for interpreters. However, the Appellants have no right to a jury "of any particular composition.'" *Paredes v. Quarterman*, 574 F.3d 281, 289 (5th Cir. 2009) (quoting *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975)). There is also no evidence to indicate that the district court transferred the case to alter the racial makeup of the jury pool. *See United States v. McKinney,* 53 F.3d 664, 673 (5th Cir. 1995). Appellants fail to establish "substantial grounds" for overturning the transfer order.

Appellants fail to establish "substantial grounds" for overturning the transfer order. Under these facts, we decline to reverse the district court's decision to transfer the case within the district.

**Severance**

On November 3, 2008, Abraham filed a motion requesting that his trial be severed from the trial of his co-defendants. In his motion, Abraham asserted that Guadalupe had a more significant criminal history, and that the prejudice

of being tried jointly with Guadalupe would be even greater because the two were brothers. Abraham complained that Guadalupe had confessed to being involved with the drug conspiracy. Abraham argued that he would not be able to confront his co-defendants about statements they had made implicating him in the conspiracy, and that such testimony, which would come in as an admission of a party opponent in a joint trial, would be inadmissible hearsay if the trials were severed. Abraham also asserted that the government would present evidence that Flores and Alvarez had been involved in a drug trafficking conspiracy for years before Abraham's alleged involvement. Finally, he argued that a joint trial could interfere with his right to remain silent if his co-defendants were to testify.

On appeal, Abraham points out that the government presented evidence that: his brother Guadalupe committed past crimes; his co-defendants possessed assault weapons; and Flores and Alvarez committed "wrongdoings" that did not involve Abraham. Abraham generally alleges that this evidence presented against his co-defendants prejudiced him by causing a "spillover effect," whereby the jury imputed one defendant's guilt onto the other.

The government argues that the testimony of the government's witnesses "adequately compartmentalized" the evidence against the co-defendants, thus Abraham was not prejudiced by a joint trial. The government points to the lower sentence Abraham received as evidence that the testimony was sufficiently compartmentalized.

This court reviews for abuse of discretion the denial of a motion for severance. *United States v. Mitchell*, 484 F.3d 762, 775 (5th Cir. 2007). Establishing an abuse of discretion in denying a motion to sever requires a defendant to show that "(1) the joint trial prejudiced him to such an extent that the district court could not provide adequate protection; and (2) the prejudice outweighed the government's interest in economy of judicial administration."

No. 09-41207

*United States v. Snarr*, 704 F.3d 368, 396 (5th Cir. 2013) (quoting *United States v. Owens*, 683 F.3d 93, 98 (5th Cir. 2012)). "Because this court is reluctant to vacate a conviction based on a district court's refusal to sever a trial, general claims of prejudice are insufficient to trigger reversal." *Id.* A "defendant must 'isolate events occurring in the course of the trial and then. . . demonstrate that such events caused substantial prejudice.'" *United States v. Lewis*, 476 F.3d 369, 384 (5th Cir. 2007) (quoting *United States v. Booker*, 334 F.3d 406, 415 (5th Cir. 2003)). The defendant must show prejudice that is both specific and compelling. *United States v. Erwin*, 793 F.2d 656, 665 (5th Cir. 1986). "There is a preference in the federal system for joint trials of defendants who are indicted together, particularly in conspiracy cases." *Lewis*, 476 F.3d at 383 (internal quotation marks and citation omitted).

Although there was a disparity in Abraham's conduct and the conduct of his co-defendants, the disparity was not extreme. *See United States v. Owens*, 683 F.3d 93, 100 (5th Cir. 2012) (finding that "'severance is required on the basis of a disparity in the evidence only in the most *extreme* cases'" (quoting *United States v. Rocha*, 916 F.2d 219, 229 (5th Cir. 1990)).

The fact that Abraham was tried with his brother Guadalupe is likewise insufficient to warrant reversing the district court's ruling.

> This court has held numerous times that the relationship between co-defendants does not require reversing the denial of a motion to sever. *See, e.g., United States v. Nguyen*, 493 F.3d 613, 625 (5th Cir. 2007) (concluding that the district court did not abuse its discretion when it denied a motion to sever filed by a defendant who was being tried with his twin brother); *United States v. Solis*, 299 F.3d 420, 441 (5th Cir. 2002) (rejecting the defendant's argument that "he was convicted on guilt by association" because he was tried with his brother); *United States v. Bermea*, 30 F.3d 1539, 1572–73 (5th Cir. 1994) (determining that the district court did not abuse its discretion by

11

denying the appellant's motion to sever even though the appellant was tried with three family members, one of whom pleaded guilty part way through the trial); *United States v. Partin*, 552 F.2d 621, 640–41 (5th Cir. 1977) (affirming the denial of a motion to sever where the defendant was tried with his father-in-law and brother); *see also United States v. Lira*, 262 F. App'x 653, 655 (5th Cir. 2008) (unpublished) (holding that even if some of the evidence against the appellant's husband was not relevant to the case against her, the district court did not abuse its discretion by denying the appellant's motion to sever her case from her husband's case because "the district court instructed the jury to give separate consideration of the evidence as to each defendant").

*United States v. Owens*, 683 F.3d 93, 99 (5th Cir. 2012).

Finally, the district court's instruction to the jury that it should give separate consideration to the evidence as to each defendant weighs against finding error. "[C]ompelling prejudice is not shown if it appears that, through use of cautionary instructions, the jury could reasonably separate the evidence and render impartial verdicts as to each defendant." *Erwin*, 793 F.2d at 665 (citation omitted); *see also United States v. Whitfield*, 590 F.3d 325, 355–56 (5th Cir. 2009) ("Limiting instructions such as these are generally 'sufficient to prevent the threat of prejudice resulting from unsevered trials.'" (quoting *United States v. Massey*, 827 F.2d 995, 1005 (5th Cir. 1987))). In the present case, the jury was properly instructed that it should evaluate the evidence against the Appellants separately. "Because it is presumed that juries follow the instructions the court gives them, we assume that the evidence against each defendant was considered separately and individually." *Owens*, 683 F.3d at 99. Abraham has not offered any specific argument, other than conclusory statements, that the jury instruction given by the district court was insufficient to cure any prejudice.

"A spillover effect, by itself, is an insufficient predicate for a motion to sever." *United States v. Bieganowski*, 313 F.3d 264, 287 (5th Cir. 2002).  And Abraham has failed to establish more than a general claim of prejudice from the alleged spillover effect. Abraham has not established that the evidence involved inflammatory facts or complex crimes that precluded the jury from being able to assess the evidence against each defendant separately and individually. *See United States v. West*, 2014 WL 642752, at * 1 (5th Cir. Feb. 20, 2014) (unpublished) (citing *Rocha*, 916 F.2d at 229); *United States v. Bermea*, 30 F.3d 1539, 1572–74 (5th Cir. 1994). Abraham has not cited any "specific and compelling instances of prejudice" that resulted from his joint trial. *See United States v. McRae*, 702 F.3d 806, 827 (5th Cir. 2012). Importantly, the district court properly excluded portions of Guadalupe's statement that directly implicated Abraham. *See United States v. Cantu-Ramirez*, 669 F.3d 619, 631-32 (5th Cir. 2012). The district court did not abuse its discretion in denying the motion to sever.

**Limitation of cross examination**

Abraham argues that his right to confront witnesses testifying against him was violated when the district court limited his cross-examination against co-conspirator Marco Negrete. Negrete testified substantially on Abraham's involvement in the conspiracy. Jose Gonzalez, a cell mate of Negrete, allegedly informed the government that Negrete attempted to recruit Gonzalez to kidnap the daughter of Appellant Flores. Abraham sought to introduce this evidence against Negrete to establish bias. The district court allowed Abraham to cross-examine Negrete on the alleged kidnapping plot outside the presence of the jury. Negrete denied knowledge of the plot. The district court subsequently limited Abraham's cross-examination testimony unless Abraham called Gonzalez to testify, because Abraham's only predicate to question

Negrete was an unauthenticated letter supposedly from Gonzalez. Abraham did not seek to question any other witness regarding the alleged plot.

"A defendant's right to cross-examine witnesses against him is a constitutional right secured by the Confrontation Clause of the Sixth Amendment." *United States v. Davis*, 393 F.3d 540, 548 (5th Cir. 2004). This court reviews de novo alleged constitutional violations of the Confrontation Clause, subject to a harmless error analysis. *United States v. Jimenez*, 464 F.3d 555, 558 (5th Cir. 2006). "'The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.'" *Id.* at 562 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). "If a jury might reasonably have questioned the witness's reliability or credibility if cross-examination had been allowed, then the denial of the right to confrontation is reversible error." *Id.*

This court examines "the trial testimony to determine whether there was a violation of a defendant's right to confront the witnesses against him." *United States v. Tuma*, 738 F.3d 681, 690 (5th Cir. 2013). In this case, the trial record reflects that Negrete was cross-examined at length, and the jury heard evidence regarding his lack of credibility sufficient to assess any bias and motives in his testimony. The defendant's Confrontation Clause rights are satisfied when the jury has been exposed "to facts from which the jury 'could appropriately draw inferences relating to the reliability of the witness.'" *United States v. Heard*, 709 F.3d 413, 432 (5th Cir. 2013) (quoting *Davis*, 393 F.3d at 548). The district court's exclusion of testimony based on a speculative and barely relevant issue does not amount to a constitutional violation. *See United States v. Diaz*, 637 F.3d 592, 597 (5th Cir. 2011) (stating that a district court has discretion "to place reasonable limits on a criminal defendant's right to cross-examine a witness based on concerns about, among other things . . .

prejudice . . . or interrogation that is . . . only marginally relevant" (internal quotation marks and citation omitted)). Abraham has not established that the district court's limitation of Negrete's cross-examination amounted to a violation of his constitutional rights.

If no constitutional violation is found, this court reviews any limitation of a defendant's cross-examination of a witness for abuse of discretion. *Id.* "That is, the defendant must show that a reasonable jury might have had a significantly different impression of the witness's credibility if defense counsel had been allowed to pursue the questioning." *Davis*, 393 F.3d at 548. "'Where there is no constitutional violation, we will not find an abuse of the trial court's discretion absent a showing that the limitations were clearly prejudicial.'" *El–Mezain*, 664 F.3d at 491 (quoting *Diaz*, 637 F.3d at 597 (internal quotations and citations omitted)).

For the previously stated reasons, Abraham has failed to establish that the district court's limitation of his cross-examination of Negrete was clearly prejudicial. The district court did not abuse its discretion when limiting Abraham's cross-examination of Negrete.

**Abraham's sentence**

Abraham's PSR recommended that Abraham be held accountable for 217 kilograms of cocaine for sentencing purposes. The district court adopted the recommendations and findings of the PSR, and found that Abraham's total offense level was 38, which included a two-level reduction for acceptance of responsibility. The applicable guideline imprisonment range was 235 to 293 months. After considering the factors listed under 18 U.S.C. § 3553(a), the court imposed a 252-month term of imprisonment. Abraham argues that there was not an adequate evidentiary basis for the district court to adopt the factual findings in the PSR with respect to the amount of cocaine attributable to him.

No. 09-41207

"The district court's calculation of the quantity of drugs involved in an offense is a factual determination this court reviews for clear error." *United States v. Betancourt*, 422 F.3d 240, 246 (5th Cir. 2005) (internal quotations and citations omitted); *see also United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008). If a district court's finding is plausible in light of the record as a whole, there is no clear error. *Solis*, 299 F.3d at 455.

United States Sentencing Guidelines § 2D1.1(c) states that a defendant's base offense level is determined by the quantity of drugs involved. The quantity of drugs involved includes not only the amount of drugs with which the defendant was directly involved, but also "in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.3, cmt. n. 2; *see also id.* § 1B1.3(a)(1). A defendant with an "obvious understanding as to the general breadth of the drug enterprise" may be held liable for the full amount of drugs involved in the conspiracy. *United States v. Duncan*, 191 F.3d 569, 577 (5th Cir. 1999).

The jury found that Abraham was a member of the drug conspiracy and acted in furtherance of the drug conspiracy. Moreover, the jury found that Abraham was guilty of Count 6 "as charged in the indictment." The indictment charged Abraham of "knowingly and intentionally possess[ing] with intent to distribute . . . approximately 217 kilograms of cocaine." The evidence supports the district court's conclusion that Abraham actively participated in the drug trafficking conspiracy and that there were massive quantities of drugs involved in the conspiracy. Accordingly, the district court did not clearly err in adopting the drug quantity of 217 kilograms in calculating Abraham's base level offense.

**Production of witness statements and emails**

16

No. 09-41207

Flores and Guadalupe[2] argue that the district court erred in denying their motion for production of witness statements and emails sent and received by agents who were to testify at trial. Specifically, Flores and Guadalupe requested that the government produce "any statement . . . prepared by the prosecuting attorneys related to the subject matter of the testimony of a government witness" and "all emails as statements made by government witnesses." They asserted that failure to produce the statements violated the Jencks Act. The government objected to these requests as overbroad and vague, and argued that there were not discoverable under the Jencks Act. Finally, the government asserted that compliance with such a request would be overly burdensome.

After a December 7, 2008 hearing, the district court denied the production request. On appeal, the government argues that Flores and Guadalupe failed to identify the relevant witness testimony that would have been subject to impeachment by their emails, or even suggest that the witnesses would testify contrary to statements made in the emails. The government further argues that the emails were not statements under the Jencks Act because the emails were akin to interview reports or notes that "contain the interpretations or impressions of agents or which were prepared after the interview without the aid of complete notes and hence rest on the memory of the agent." Because the emails were not "essentially transcriptions of interview notes," which the government asserts is required under Jencks, the district court did not err in denying their production.

---

[2] On appeal, Guadalupe fails to adequately present an argument on this issue. He cites no case law, nor does he identify any government witnesses against whom he would have or could have used the withheld documents. He further fails to identify or even describe in general terms any document withheld by the government. As such, we consider this issue forfeited as to Guadalupe and address the issue only as to Flores. *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987); FED. R. APP. P. 28(a)(8).

No. 09-41207

The Jencks Act requires that the government provide the defendant with witness statements that relate to the subject matter on which the witness has testified. 18 U.S.C. § 3500. The term "statement" is a term of art defined by the Jencks Act as

> (1) a written statement made by said witness and signed or otherwise adopted or approved by him;
>
> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement. . . .

*Id.*

This court reviews Jencks Act rulings for clear error. *United States v. Brown*, 303 F.3d 582, 591 (5th Cir. 2002). "Even when a [Jencks Act] violation is found, the failure to produce prior statements is subject to a harmless error analysis." *United States v. Ramirez*, 174 F.3d 584, 587 (5th Cir. 1999). "We strictly apply harmless error analysis and determine whether the error itself had a substantial influence on the judgment in addition to determining whether there was sufficient evidence to support the conviction." *United States v. Montgomery*, 210 F.3d 446, 451 (5th Cir. 2000).

Because a statement must be approved by the witness to fall under the Jencks Act, the emails authored by agents discussing witnesses were not discoverable. *See* 18 U.S.C. § 3500(e)(1); *United States v. Gaston*, 608 F.2d 607, 611 (5th Cir. 1979). An agents' reports of witness interviews or debriefings may contain "phrases or isolated sentences identical to the language used by the witness," but "this does not necessarily make such notes a 'statement' for Jencks Act purposes" unless they are substantially verbatim, contemporaneously recorded transcripts of oral statements, or are written by

the witness and signed or otherwise ratified by the witness. 18 U.S.C. § 3500(e)(1)-(2); *United States v. Cole*, 634 F.2d 866, 867-69 (5th Cir. 1980); *Gaston*, 608 F.2d at 611. Agent Juan Hernandez, who authored many of the emails, testified during the court's hearing on the motion to produce the emails. The record also reflects that the district court examined the emails to determine whether they were discoverable under the Jencks Act "and made findings based on that examination." *See United States v. Kizer*, 2014 WL 545419, at *1 (5th Cir. Feb. 12, 2014) (unpublished). Moreover, the emails were not prepared or verified by the witnesses who were interviewed by the agents, and did not purport to be a substantially verbatim account of the witnesses' statements. Likewise, there is no indication that the agents' version of the facts reviewed by or read to them for their adoption or approval. *See United States v. Williams*, 998 F.2d 258, 269 (5th Cir. 1993); *United States v. Pierce*, 893 F.2d 669, 675 (5th Cir. 1990).

Here, the emails were not exact transcriptions of interview notes but summaries of interpretations or impressions of the agents. This does not meet the Jencks requirement of "essential[] transcriptions" of interview notes, thus the district court did not clearly err in denying their production. Moreover, even if the statements had been subject to the Jencks Act, Flores did not demonstrate that any such error would be harmless.

**Challenge to the search warrant**

On May 5, 2008, Abraham filed a motion to suppress physical evidence that had been seized pursuant to a search warrant executed on his home on May 25, 2007. During the search, police officers seized certain documents, Airgas Employee ID's, UPS labels, and internet search page information. Agents also took photographs of evidence they found, including candles in a bucket with the phrase "shut your mouth," and various items inside Abraham's bedroom. The seized evidence was introduced at trial.

No. 09-41207

Abraham raises several issues with respect to the search warrant. Abraham argues that the affidavit supporting the search warrant lacked probable cause. Abraham asserts that the affidavit was stale, and further failed to establish that the confidential informant had personal knowledge and failed to establish the credibility of the informant. The government responds that DEA Agent Juan Hernandez filed a 21-page affidavit in support of the application of a search warrant, which summarized Abraham's role in the conspiracy, including the use of Airgas oxygen tanks to transport drugs. The government argues that the information gathered from the confidential informant was corroborated by the observations made by the investigator during the execution of the drug conspiracy.

We review the district court's factual findings for clear error and its conclusions of law de novo. *United States v. Payne*, 341 F.3d 393, 399 (5th Cir. 2003). We will "uphold the district court's ruling to deny the suppression motion if there is any reasonable view of the evidence to support it." *United States v. Michelletti*, 13 F.3d 838, 841 (5th Cir. 1994) (en banc) (internal quotation marks and citation omitted).

When evaluating the sufficiency of a search warrant, this court must "first determine whether the good-faith exception to the exclusionary rule applies." *United States v. Shugart*, 117 F.3d 838, 843 (5th Cir. 1997). This exception provides that "evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible in the prosecution's case-in-chief, even though the affidavit on which the warrant was based was insufficient to establish probable cause." *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988). Typically, "[i]ssuance of a warrant by a magistrate . . . suffices to establish good faith on the part of law enforcement officers who conduct a search pursuant to the warrant." *Id.* The good-faith exception applies unless, *inter alia,* "the warrant was based on

an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Gibbs*, 421 F.3d 352, 355 (5th Cir. 2005) (internal quotation marks and citation omitted).

Abraham fails to address the good-faith exception in his briefing to this court, but he impliedly argues that the exception does not apply because the affidavit upon which the search warrant relies was stale. Abraham contends that all the information in the affidavit concerning him was from the spring of 2005. However, the affidavit states that the affiant learned in 2007 that Abraham was a driver for Airgas Company, which reported twenty missing oxygen tanks, at least one of which was had been modified to secret cocaine. The affidavit upon which the search warrant was based further implicated Abraham in a "long-standing, ongoing pattern of criminal activity," and thus "the information need not be regarded as stale." *Craig*, 861 F.2d at 822 (internal quotation marks and citation omitted). As such, Abraham does not overcome the good-faith exception.

Abraham also asserts that because the search occurred outside the time frame authorized by the warrant, the subsequent search and seizure was conducted without a valid warrant. The order authorizing the search warrant stated that the search should be conducted on or before October 24, 2007. The search warrant was executed on Abraham's home on October 25, 2007. The government argues that the execution of the search warrant one day after the date ordered on the warrant did not undermine the officers' good faith reliance on the warrant in searching Abraham's house. The execution of the search warrant one day after it expired also fails to overcome the good-faith exception. *See United States v. Leon*, 468 U.S. 897, 918 (1984) (finding that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule").

No. 09-41207

Finally, Abraham failed to prove that the search warrant was "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *See Gibbs*, 421 F.3d at 355 (internal quotation marks and citation omitted). An affidavit in support of a warrant need not "vouch for the informant's veracity." *United States v. Fisher*, 22 F.3d 574, 579 (5th Cir. 1994). Because we find that the good-faith exception applies, we end our suppression analysis. *See United States v. Woerner*, 709 F.3d 527, 535 (5th Cir. 2013). Accordingly, the district court did not commit reversible error in denying Abraham's motion to suppress.

**Production of progress reports**

Flores argues that the district court erred when it did not require disclosure of the progress reports supporting the wire taps. The wiretap orders required that the government provide progress reports on the eleventh, twenty-first, and thirty-first days of interception. Flores argues that these reports were essentially extensions of the original court order authorizing interception. He also argues that disclosure of the progress reports was "essential" in preparing a motion to suppress the wiretaps. He asserts that the government's failure to provide the progress reports should have deprived it from using any information obtained from those interceptions.

The government responds that the progress reports were not subject to disclosure because they represented work product and that Flores failed to demonstrate that the lack of disclosure affected the sufficiency of his motion to suppress the wiretap evidence. Finally, the government argues that the progress reports fall within Federal Rule of Criminal Procedure 16(a)(2)'s law enforcement exception to discovery because they were prepared by prosecutors and agents.

Because "progress reports do not provide a defendant with any original information beyond what can be found in the tapes, transcripts, and monitor

22

No. 09-41207

log sheets," to which the defendant is already entitled, *United States v. Wright*, 121 F. Supp. 2d 1344, 1350-52 (D. Kan. 2000), we find that the progress reports are not discoverable. *See* Clifford S. Fishman & Anne T. McKenna, WIRETAPPING AND EAVESDROPPING § 33:13 (citing cases). As such, we find that the district court did not err in denying Flores's motion for production.

**Comments made during voir dire**

Flores argues that the district court erred by not dismissing the jury panel after the court made an allegedly disparaging remark in the presence of the jury. During voir dire for the second trial, the judge asked if anyone was acquainted with Flores's counsel. One of the potential jurors asked which church Flores's counsel attended. The court interjected "I'm surprised he goes to church. Just kidding. A little levity." Flores's counsel then revealed that he attended the same church as the potential juror. The jury was empaneled without objection. However, prior to the start of trial, Flores moved the court to strike the jury as the remark was "unethical" and "tainted" the jury against his counsel. The government asserts that any error arising from the court's comment was cured by the length of the trial and the court's instructions to the jury.

The district court's remark was made 14 days before the case was submitted to the jury. During jury instructions the district court admonished the jury to "not assume from anything I may have done or said during these proceedings that I have any opinion concerning any of the issues in this case. Except for these instructions to you on the law, you should disregard anything I may have said during these proceedings in arriving at your own findings as to the facts."

When reviewing claims of judicial misconduct, this court must "determine whether the judge's behavior was so prejudicial that it denied the

defendant a fair, as opposed to perfect, trial." *Bermea*, 30 F.3d at 1569. The proceedings must be viewed as a whole to determine whether the judge's actions "amount to an intervention that could have led the jury to a predisposition of guilt. . . ." *Id.*

An instruction can cure minor disparaging comments. *See id.* at 1571-72; *United States v. Zapata*, 477 F. App'x 207, 208 (5th Cir. 2012) (unpublished) (disparaging remark by judge cured by instruction that jury "should disregard anything it had said in determining [defendant's] guilt or innocence"); *United States v. Lankford*, 196 F.3d 563, 573 (5th Cir. 1999) (finding that instructions to the jury can "operate against" a finding of judicial misconduct). Certainly, "a trial judge has enormous influence on the jury and therefore must act with a corresponding responsibility." *United States v. Williams*, 809 F.2d 1072, 1086 (5th Cir. 1987). However, Flores has not demonstrated that the district court's remark resulted in substantial prejudice. *See Bermea*, 30 F.3d at 1571. A review of the record demonstrates that the comment did not deprive Flores of a fair trial, and overall the trial was conducted in an impartial manner. As such, there was no reversible error with respect to Flores's claim of judicial misconduct.

**Jury instructions**

Guadalupe argues that the district court erred in denying his proposed jury instruction and challenge to the jury charge. Guadalupe argues that Flores sought him out to find a lawyer and bondsmen for a co-conspirator after the co-conspirator was arrested for possession of 217 kilograms of cocaine. Guadalupe contends that the government failed to present any additional evidence that he was involved in the conspiracy or possession of the cocaine and that he did not get involved in the conspiracy until weeks after the cocaine was seized. Guadalupe requested that the court include an instruction for accessory after the fact as a lesser included offense.

The government argues that Negrete testified that Guadalupe was involved in the drug trafficking conspiracy before the seizure occurred. The government also argues that Guadalupe was found guilty of conspiracy to possess with intent to distribute and of aiding and abetting in the possession of a controlled substance, and accessory after the fact is not a lesser included offense of aiding and abetting because it requires proof that the defendant gave assistance "in order to prevent the apprehension, trial, or punishment of the offender."

In *United States v. Avants*, 367 F.3d 433, 450 (5th Cir. 2004), this court considered whether a defendant was entitled to an "accessory after the fact" instruction in a case where he was charged with aiding and abetting murder.

> A defendant is entitled to a jury instruction on a lesser included offense if (1) the elements of the lesser offense are a subset of the elements of the charged offense (statutory elements test), and (2) the evidence at trial permits a rational jury to find the defendant guilty of the lesser offense yet acquit him of the greater. We review the first prong *de novo;* the second, for abuse of discretion. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).

*Avants*, 367 F.3d at 450 (internal quotation marks and citations omitted). We concluded that "accessory after the fact is not a lesser included offense of aiding and abetting because the former requires proof that the defendant gave assistance in order to prevent the apprehension, trial, or punishment of the offender." *Id.* (internal quotation and citation omitted). Similarly, neither conspiracy nor possession require proof that the defendant gave assistance in order to prevent the apprehension, trial or punishment of the offender. *See, e.g. United States v. Thomas*, 690 F.3d 358, 366 (5th Cir.), *cert. denied*, — U.S. —, 133 S.Ct. 673 (2012) (listing elements for conspiracy); *see United States v. Lopez*, 979 F.2d 1024, 1031 (5th Cir. 1992) (listing elements for possession).

No. 09-41207

We find that the district court did not err in denying Guadalupe's proposed jury charge.[3]

**Sufficiency of the evidence**

Guadalupe argues that the evidence presented at trial was insufficient to show that he was not a participant in the drug trafficking conspiracy, nor was it sufficient to establish that he possessed drugs. Because Guadalupe moved for a judgment of acquittal at the close of the Government's case and again after the close of all evidence, he preserved the issue for appellate review and we review de novo his challenge to the sufficiency of the evidence. *See United States v. Ollison*, 555 F.3d 152, 158 (5th Cir. 2009).

"[R]eviewing courts must affirm a conviction if, afterviewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, No. 11-41363, 2014 WL 1303364, at * 1 (5th Cir. Mar. 12, 2014) (en banc) (citing *Jackson v. Virginia*, 443 U.S. 307, 312 (1979 (emphasis in original)). Our review of factual findings underlying a jury verdict is highly deferential. *Ham Marine, Inc. v. Dresser Indus., Inc.*, 72 F.3d 454, 461 (5th Cir. 1995). "Unless the evidence is of such quality and weight that reasonable and impartial jurors could not arrive at such a verdict, the findings of the jury must be upheld." *Id.* at 459.

To sustain a conviction for conspiracy, the government must prove "(1) an agreement existed between two or more persons to violate federal narcotics

---

[3] Guadalupe also asserts that this circuit's lesser included offense test is unconstitutional because it prevents lesser included offense instructions which are supported by the evidence simply because the statutory elements differ. Guadalupe's sole citation to *Beck v. Alabama*, 447 U.S. 625 (1980), is readily distinguishable. In *Beck*, the Supreme Court struck down a categorical bar on giving lesser included offense instructions in capital cases. *Id.* at 627. *Beck* does not suggest that a lesser included offense analysis based on statutory elements is unconstitutional. Guadalupe has failed to identify a case which clearly supports that conclusion.

law, (2) the defendant knew of the existence of the agreement, and (3) the defendant voluntarily participated in the conspiracy." *Thomas*, 690 F.3d at 366 (internal quotations and citations omitted). The essence of the crime of conspiracy is the agreement to commit an unlawful act. *Iannelli v. United States*, 420 U.S. 770, 777 (1975). The agreement need not be explicit, but can be inferred from the facts and circumstances of the case. *Id.* at 777 n.10.

When viewed in the light most favorable to the government, the evidence presented at trial would allow a rational trier of fact to find beyond a reasonable doubt that Guadalupe knowingly participated in a conspiracy to distribute drugs. *See Thomas*, 690 F.3d at 366. Guadalupe's argument on appeal consists of the following conclusory statement: "[t]he defendant in this case was nothing more than a person who came along after the [cocaine was seized] and was asked to look for a lawyer or a bondsman. That, without more[,] is not evidence of a conspirator. That is evidence of a friend." However, the jury heard evidence that Guadalupe did more than simply secure a bond and attorney for a co-conspirator after the co-conspirator's arrest. The evidence showed that Guadalupe (1) utilized his position as a UPS employee to transport contraband in UPS packages; (2) confessed to his participation in obtaining UPS labels for drug transport; and (3) was recorded during phone conversations between Guadalupe and co-conspirators relating to drug trafficking transactions.

To sustain a conviction for possession, the government must prove that Guadalupe knowingly possessed drugs with the intent to distribute. *See Lopez*, 979 F.2d at 1031. Possession may be actual or constructive and can be proved by circumstantial evidence. *Id.*

Evidence presented at trial to sustain the possession charge included phone conversations between Guadalupe and co-conspirators relating to his drug trafficking transactions, and Guadalupe's transferring drugs via UPS. A

jury could reasonably find that Guadalupe possessed drugs with an intent to distribute. The evidence presented at trial was sufficient to sustain the jury's guilty verdict on the conspiracy and possession charges.

## III.

For the foregoing reasons, we affirm the convictions of all four Appellants. We also affirm the district court's declaration of a mistrial and order transferring the case within the district. We further affirm the district court's denial of the motion to sever, the two motions for production, the motion to suppress, and the motion to strike. We affirm the district court's limitation of Abraham's cross-examination of a witness, and its denial of Guadalupe's proposed jury charge. Finally, we affirm Abraham's sentence.

AFFIRMED.